SHARON ANNE ROBERTSON *v.* ROBERT APUZZO

HOUSE, C. J., LOISELLE, BOGDANSKI, LONGO and MACDONALD, Js.

Argued December 10, 1975—decision released March 16, 1976

368

*Francis X. Dineen,* with whom was *Joanne S. Faulkner,* for the appellant (defendant).

*Michael A. Arcari,* assistant attorney general, with whom, on the brief, was *Carl R. Ajello,* attorney general, for the appellee (plaintiff).

HOUSE, C. J.   This action was instituted by the plaintiff, Sharon Anne Robertson, an unmarried woman, by a verified petition dated March 17, 1970, and filed in the Circuit Court alleging that the defendant, Robert Apuzzo, was the father of her child.   See 1967 Public Acts, No. 520, § 1, "An Act Concerning Paternity Actions Commenced During Pregnancy."   The defendant, by way of answer, pleaded not guilty.   He thereupon filed a claim for a jury of twelve, pursuant to the provisions of § 52-438 of the General Statutes as it then read.[1] He also filed a motion that the court determine that there was no fee required for a jury in his case or in the alternative that the court waive payment of the $100 jury fee required to be paid by any party claiming a jury of twelve in any civil action by the provisions of § 52-258 of the General Statutes as

---

[1] General Statutes § 52-438 as it was in effect in 1970 provided: "EITHER PARTY MAY DEMAND JURY TRIAL.   In any prosecution under the provisions of this chapter, the trial of the question of fact as to the guilt or innocence of the defendant shall, at the desire of either party, be by jury, and any request for a jury trial shall be deemed to be for a jury of six unless a full jury of twelve is specifically requested."

then in effect (1967 Public Act No. 628, § 2).[2] With his motion, he filed a financial affidavit which recited that he had no assets, that for the prior six weeks he had been employed with a band from which his income averaged $59 a week, that "he has had to make numerous expenditures for food, clothing, and traveling expenses incident to said employment," and that during this time he had been trying to save toward the $75 cost of blood grouping tests, which sum he had not as yet been able to raise. The motion was denied by the court on September 30, 1970, without memorandum of decision or any indication of reasons for the denial.

The issues on the merits were then tried to the court which found for the plaintiff, adjudged the defendant to be the father of the child and ordered him to pay to the plaintiff the sum of $13 per week for the current support of the child, plus $5 per week to be applied to the judgment sum of $1625.

The defendant appealed to the Appellate Division of the Circuit Court, including in his assignments of error the denial of his motion relative to the jury fee, the denial of his motion for a mistrial, and the denial of his motion that the court correct

---

[2] "[1967 Public Act No. 628] AN ACT CONCERNING COURT FEES. . . . Sec. 2. . . . The jury fee in the superior court, court of common pleas or circuit court shall be thirty dollars for a jury of six and one hundred dollars for a jury of twelve, to be paid in civil actions at the time the case is claimed for jury by the party at whose request the same is placed upon the jury docket, and such fee shall be taxed in favor of the party paying the same in the bill of costs in such action, if final judgment thereon is rendered in his favor. If any party in a civil action pays the fee of thirty dollars for a jury of six and thereafter any other party claims a jury of twelve within the time prescribed by law, such other party need pay only seventy dollars additional for the jury of twelve."

As amended by Public Act No. 74-183, § 52-258 now fixes the jury fee in civil actions at forty dollars.

its findings to include the facts recited in the defendant's financial affidavit. The trial court made no finding disclosing the reasons for its denial of the defendant's motion relating to the jury fee; and, on the record, it was impossible to determine whether the motion was denied because the court found that the defendant had not proved his indigency or because the court was of the opinion that his indigency, if it existed, was irrelevant. The Appellate Division found no error in the decision of the trial court commenting that "in the absence of a finding it may be presumed that the denial was based on what the trial court considered to be legal and sufficient reasons." We granted the defendant's petition for certification for an appeal.

Following oral argument of the defendant's appeal, this court, pursuant to the provisions of § 692 of the Practice Book, ordered that the trial court file "a supplemental finding as to the issue of indigency, such as circumstances permit, and also setting forth the basis for its ultimate conclusion, including any claims of law made together with the conclusions reached thereon, with respect to the denial of the defendant's motion entitled 'Motion to Waive Jury Fee.'" Such a supplemental finding, to determine the basis for the court's ruling on the defendant's motion for waiver of the jury fee, was deemed desirable in the interests of judicial economy and to determine if the question of whether an indigent defendant in a paternity proceeding is entitled to a jury trial without the payment of the statutory fee required decision or was in fact moot.

In accordance with the direction of this court, the trial court did file a supplemental finding containing, in addition to a statement of the claims of law

found to have been made by the defendant, eight findings of fact and six conclusions including one that the defendant was not indigent. The defendant then filed assignments of error directed to this supplemental finding, and the parties filed supplemental briefs and argued their respective positions. It is unnecessary to discuss fully the merits of the defendant's assignments of error addressed to the supplemental finding. It suffices to state our conclusion that the trial court erred in imposing on the defendant an excessive burden of proof and in taking judicial notice of and considering a financial affidavit filed earlier in the proceedings, without notice to the defendant that its contents would be used against him and without affording him an opportunity to explain it or show any intervening change in circumstances.

Rather than further delaying a decision on this appeal in order to obtain from the trial court an error-free supplemental finding on the issue of indigency, we have decided to consider the basic question of whether an indigent defendant in a paternity action is entitled to a waiver of the statutory fee for a jury trial. The parties have fully briefed and argued this question and we will decide it as presented.

It is the contention of the defendant, briefly stated, that a paternity action in Connecticut "is a quasi-criminal proceeding to which the constitutionally-protected right to jury trial must apply" and, accordingly, the "defendant was denied his constitutional rights of due process and equal protection when he was denied a jury trial in this paternity action because he was unable to pay the $100 fee."

These contentions must be approached with a clear understanding that the requirements of due process are not fixed but depend on the nature of the case under consideration and the relative interests, both governmental and private, involved. See, e.g., *Goldberg* v. *Kelly*, 397 U.S. 254, 262, 263, 90 S. Ct. 1011, 25 L. Ed. 2d 287; *Cafeteria & Restaurant Workers Union* v. *McElroy*, 367 U.S. 886, 895, 81 S. Ct. 1743, 6 L. Ed. 2d 1230; *Hart Twin Volvo Corporation* v. *Commissioner of Motor Vehicles*, 165 Conn. 42, 47 n.2, 327 A.2d 588.

It is well settled that in Connecticut paternity actions are civil and not criminal proceedings and the general rules governing civil actions apply. *Kuser* v. *Orkis*, 169 Conn. 66, 71, 362 A.2d 943; *Pelak* v. *Karpa*, 146 Conn. 370, 372, 151 A.2d 333; *Ferguson* v. *Smazer*, 151 Conn. 226, 227 n.1, 196 A.2d 432; *Copes* v. *Malacarne*, 118 Conn. 304, 305, 172 A. 89; *Pierzanowski* v. *Jezewski*, 116 Conn. 704, 705, 164 A. 207; *Hamden* v. *Collins*, 85 Conn. 327, 330, 82 A. 636. This is in accord with the view accepted by most jurisdictions. See 10 Am. Jur. 2d 901, Bastards, § 75.

Over 150 years ago, in *Hinman* v. *Taylor*, 2 Conn. 357, 360, Chief Justice Zephaniah Swift observed: "A suit for the maintenance of a bastard child is a statutory process *sui generis*, partaking altogether of the nature of a *civil*, and not of a criminal suit. The general rules respecting civil cases are applicable to it. The plaintiff can withdraw, and is liable to cost if unsuccessful; the defendant may plead a discharge, appear by attorney, and be defaulted. Though the process is *forthwith*, as in criminal cases, yet it resembles a criminal proceeding in nothing else. It can be prosecuted by an individual,

without joining the state; and no punishment what-
ever can be inflicted. . . . To constitute a criminal
suit, some punishment must be inflicted in behalf
of the state." In a concurring opinion, Justice
Hosmer observed (pp. 361–62): "It has been con-
tended, that the action on the statute of *bastardy,*
is not a civil, but a criminal suit; and of consequence,
that the state is prosecutor. In my opinion this
proposition is without the shadow of foundation.
The *process* under the act is not *criminal* process;
the *end* of the law is the redress of a *civil* injury;
and if the proceedings to enforce the plaintiff's
right were precisely analogous to a public prose-
cution for a criminal offence, she could not prose-
cute *in her own proper person.* The *process* in this
case, under the act of *bastardy,* is not *criminal*
process. It is a complaint subscribed by Nancy
Taylor. This is not the mode of prosecuting for a
criminal offence; but is in precise conformity to a
bill in equity. . . . The *end* of the law concerning
*bastardy,* is the redress of a *civil* injury. This, with
the preventive remedy for the protection of towns,
constitutes the whole of it. The law provides for
the maintenance of the bastard in aid of the mother.
It requires security, by bond, to shield the town
where the child is born, from its support. Here is
no public wrong to be redressed; no offender to
be punished; but a sum of money for the infant's
maintenance is all which the statute contemplates.
An action for money had and received, is no more
the redress of a civil injury, than a suit to obtain
the benefit of this law. To this remark it may be
superadded, that the manner of obtaining the object,
is definitely pointed out. It is *by suit in behalf of
the mother;* or, if she omit to sue, or prosecute, *in
behalf of the town.*"

The common law did not afford a remedy to compel a putative father to contribute to the support of his illegitimate child. Annot., 94 A.L.R.2d 1129, "Bastardy Proceedings—Jury Trial"; 10 Am. Jur. 2d 895, Bastards, § 68; annot., 30 A.L.R. 1069, "Nonstatutory Duty of Father to Support Illegitimate Child." In Connecticut, however, since the early days of the colony, maintenance of a bastard child has been provided for by statute and it has ever since been the policy of this state to require a father to support his illegitimate child. See Statutes, 1672, p. 6; *State* v. *Wolfe,* 156 Conn. 199, 203, 239 A.2d 509. While the earlier statutes used such terms as "arrest," "prosecution" and "guilty" they historically did not have the same connotation as present-day usage in criminal proceedings. As was held in *Naugatuck* v. *Smith,* 53 Conn. 523, 526, 3 A. 550, the detention of the body of the defendant was "for the plaintiff's security and not for the purpose of retaining jurisdiction. If that is not resorted to the defendant may abscond, and the plaintiff may lose all means of enforcing the judgment. . . . It closely resembles a civil suit in actions for tort, in which the body may be arrested and held to respond to the judgment. The arrest and detention of the body are for security and not to give jurisdiction." See also *Copes* v. *Malacarne,* supra, 306. The words "prosecution" and "guilty" merely referred to a finding adjudging the defendant to be the father of the child whose paternity was in question. *Comstock* v. *Weed,* 2 Conn. 155, 157. In any event, in 1965 (prior to the commencement of the present proceedings), the statute providing for "Bastardy Proceedings" (General Statutes § 52-435) was repealed and the basic statute pursuant to which the present proceedings were instituted was enacted

as § 52-435a in chapter 911 entitled "Paternity Proceedings." No longer is there any reference in that section to quasi-criminal procedures such as arrest, pleas of guilty or not guilty, hearing on probable cause or binding over for trial. A plaintiff's paternity action has been stripped of any quasi-criminal characteristics and clearly converted to an unmistakable civil action.

The defendant argues that the statutory provisions for enforcement of a judgment rendered against a defendant in a paternity proceeding characterize the proceedings as criminal rather than civil. Section 52-442 of the General Statutes provides that the judgment of the court may order the defendant to stand charged with the support and maintenance of the child, with the assistance of the mother if she is financially able, and to pay a sum certain weekly until the child attains the age of eighteen years, to pay the expense of lying-in "and shall grant execution for the same and costs of suit taxed *as in other civil actions,* together with a reasonable attorney's fee." (Italics supplied.) The court is also authorized to require the defendant to become bound with sufficient surety that he will comply with these orders. It further provides that "[i]f he fails to comply with any such order," he may be committed "to a community correctional center, there to remain until he complies therewith," and that failure of the defendant to obey any order for support "may be punished as for contempt of court and the costs of commitment of any person imprisoned therefor shall be paid by the state as in criminal cases." Section 52-443 also provides that no person committed for failure to comply with such an order of the court shall be entitled to any of the privileges allowed other prisoners on

civil process or to take a poor debtor's oath within six months of such commitment but shall be kept at hard labor during such six months.

It is obvious that the contempt proceedings authorized by § 52-442 are remedial in purpose, designed to operate in a prospective manner and to coerce, rather than to punish, the contemnor to comply with the orders of the court. "The execution against the body [is] merely a means to collect the payments due . . . ." *White* v. *Keilty,* 128 Conn. 313, 319, 22 A.2d 775. The provisions for accomplishing execution of the court's money judgment and for contempt proceedings for failure to comply with the orders of the court do not convert the plaintiff's cause of action out of which the defendant's contempt of court arose from a civil to a criminal one. The contemnor, under the provisions of the statute (§ 52-442), may purge himself of his contempt of the court's order at any time by complying with it. "When the petitioners carry 'the keys of their prison in their own pockets,' . . . the action 'is essentially a civil remedy designed for the benefit of other parties and has quite properly been exercised for centuries to secure compliance with judicial decrees.'" *Shillitani* v. *United States,* 384 U.S. 364, 368, 86 S. Ct. 1531, 16 L. Ed. 2d 622.

We conclude that the present action is clearly a civil one, not a criminal prosecution, and now turn to the question of whether an indigent defendant in a paternity action may be denied a jury trial unless he pays the statutory fee required of every party to a civil action who desires a trial by a jury rather than by a court. The question clearly is not whether the defendant had a right to a jury trial. That right is provided by § 52-438 of the General

Statutes and by statute has been accorded to parties in paternity actions since 1838. Statutes, 1838, title XIX, § 3. Rather, the question is whether that right can be exercised without first paying the jury fee required by statute to be paid by any party to a civil action who desires a jury rather than a court trial. The payment of a jury fee has been required as a condition for obtaining a jury trial in a civil action at least since 1821. Section 7 of the 1821 Revision, title 85, provided a fee of seventy-five cents for each juror, "fifty cents of which shall be paid by the parties, and twenty-five cents by the state." In the Revision of 1875, chapter VII, page 175, the forerunner of what is now § 52-258 of the General Statutes appears under the title "State Duties in Courts." It provided: "The jury fee in the Superior Court, Court of Common Pleas or District Court shall be six dollars, to be paid, in civil actions, by the party bringing the cause before the court." Hence, the requirement of the payment of a jury fee in a civil action existed prior to the enactment of the statute in 1838 granting a right to jury trial in a paternity case and has ever since been a requirement.

In determining whether this fee requirement passes constitutional muster, the defendant places reliance on the decision of the United States Supreme Court in *Boddie* v. *Connecticut,* 401 U.S. 371, 91 S. Ct. 780, 28 L. Ed. 2d 113. There the court held that Connecticut could not, consistent with the due process clause of the fourteenth amendment to the constitution of the United States, deny access to its divorce courts to indigents unable to pay filing and service of process fees. "[D]ue process requires, at a minimum, that absent a countervailing state interest of overriding significance, persons

forced to settle their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard." Id., 377. "[A] cost requirement, valid on its face, may offend due process because it operates to foreclose a particular party's opportunity to be heard." Id., 380. Mr. Justice Harlan, writing for the majority, characterized marriage as a "fundamental human relationship" (p. 383) which the state required to be adjusted only by access to the courts having jurisdiction over divorce. In concluding, he "re-emphasize[d] that we go no further than necessary to dispose of the case before us . . . . Thus we hold only that a State may not, consistent with the obligations imposed on it by the Due Process Clause of the Fourteenth Amendment, pre-empt the right to dissolve this legal relationship without affording all citizens access to the means it has prescribed for doing so." Id., 382–83.

Subsequent decisions by the Supreme Court concerning the constitutionality of filing fees in civil cases reinforce the conclusion that the principle enunciated in *Boddie* is not to be extended further. In *United States* v. *Kras,* 409 U.S. 434, 93 S. Ct. 631, 34 L. Ed. 2d 626, the court upheld a statute requiring the payment of a filing fee in bankruptcy proceedings, noting that, unlike the special marriage relationship and associational interests in *Boddie,* there was no fundamental interest gained or lost depending on the availability of a discharge in bankruptcy. Further, the debtor had other methods available for the adjustment of his legal relationship with his creditors. The decision in the *Kras* case also made the following significant observation: "Just two months after *Boddie* [401 U.S. 371, 91 S. Ct. 780, 28 L. Ed. 2d 113] was decided, the

Court denied certiorari in *Garland* [*In re Garland*, 428 F.2d 1185], 402 U.S. 966 [91 S. Ct. 1624, 29 L. Ed. 2d 130]. Mr. Justice Brennan was of the opinion that certiorari should have been granted. Mr. Justice Black, in an opinion applicable to *Garland* and to seven other then-pending cases, [*Meltzer* v. *LeCraw & Co.*] 402 U.S. 954 [91 S. Ct. 1624, 29 L. Ed. 2d 124], dissented and would have heard argument in all eight cases[3] 'or reverse them outright on the basis of the decision in *Boddie*.' Id., at 955. For him 'the need . . . to file for a discharge in bankruptcy seem[ed] . . . more "fundamental" than a person's right to seek a divorce.' Id., at 958. And Mr. Justice Douglas similarly dissented from the denial of certiorari in *Garland* and in four other cases because 'obtaining a fresh start in life through bankruptcy proceedings . . . seemingly come[s] within the Equal Protection Clause.' 402 U.S. 960, 961.

"Thus, although a denial of certiorari normally carries no implication or inference, *Chessman* v. *Teets*, 354 U.S. 156, 164 n.13 (1957) [77 S. Ct. 1127, 1 L. Ed. 2d 1253]; *Brown* v. *Allen*, 344 U.S. 443 (1953) [73 S. Ct. 397, 97 L. Ed. 469], the pointed dissents of Mr. Justice Black and Mr. Justice Douglas to the denial in *Garland* so soon after *Boddie*, and Mr. Justice Harlan's failure to join the dissenters, surely are not without some significance as to their and the Court's attitude about the application of the *Boddie* principle to bankruptcy fees." *United States* v. *Kras*, supra, 442–43.

---

[3] We note that one of those eight cases denying certiorari was *Kaufman* v. *Carter*, 402 U.S. 964, 954, 960, 91 S. Ct. 1624, 29 L. Ed. 2d 128, in which an indigent mother was denied court-appointed counsel to defend against a California state civil suit to declare her an unfit mother and take five of her seven children from her.

In *Ortwein* v. *Schwab,* 410 U.S. 656, 93 S. Ct. 1172, 35 L. Ed. 2d 572, rehearing denied, 411 U.S. 922, 93 S. Ct. 1551, 36 L. Ed. 2d 315, the requirement of a filing fee to appeal from a reduction in old age assistance after a hearing by the welfare agency was held not violative of an indigent's due process rights since there was a hearing and no fundamental interest was gained or lost depending on the availability of appeal. In a recent case, *Sosna* v. *Iowa,* 419 U.S. 393, 95 S. Ct. 553, 42 L. Ed. 2d 532, the court upheld a one-year residency requirement for divorce because access to the courts was merely delayed and there was not a total deprivation of access.

The requirement of a fee for a jury trial in a civil paternity action clearly satisfies the due process requisites elucidated in *Boddie* and its progeny. The plaintiffs in *Boddie,* on the one hand, and Robert Apuzzo, on the other, stood in materially different postures. Cf. *United States* v. *Kras,* supra, 444. The right to a jury trial in a civil paternity action cannot be characterized as fundamental.

Neither the federal nor state constitutions secure to this defendant the right to a jury trial. The seventh amendment to the federal constitution is not incorporated into the fourteenth amendment and is not applicable to state court proceedings. *Colgrove* v. *Battin,* 413 U.S. 149, 169 n.4, 93 S. Ct. 2448, 37 L. Ed. 2d 522; *Walker* v. *Sauvinet,* 92 U.S. 90, 92–93, 23 L. Ed. 678; *Bringe* v. *Collins,* 274 Md. 338, 335 A.2d 670, 675; *State* v. *Palko,* 122 Conn. 529, 541, 191 A. 320, aff'd, 302 U.S. 319, 58 S. Ct. 149, 82 L. Ed. 288, overruled in part, on other grounds, in *Benton* v. *Maryland,* 395 U.S. 784, 793, 89 S. Ct. 2056, 23 L. Ed. 2d 707.

Article first, § 19, of the constitution of Connecticut, adopted in 1965, declares "[t]he right of trial by jury shall remain inviolate." This language is identical to that of article first, § 21, of the 1818 constitution, and this court has held that provision to secure the right of a jury trial wherever that right existed when our constitution was adopted in 1818. *Swanson* v. *Boschen,* 143 Conn. 159, 162, 120 A.2d 546; *U. S. Fidelity & Guaranty Co.* v. *Spring Brook Dairy, Inc.,* 135 Conn. 294, 297, 64 A.2d 39; see *Szarwak* v. *Warden,* 167 Conn. 10, 34, 355 A.2d 49. As we have already noted, the common law did not afford a remedy to compel a putative father to contribute to the support of his illegitimate offspring. The early Connecticut bastardy statutes made no provision for jury trial, and although "[f]or sometime it was the practice to try the issue of not guilty by the jury, . . . it appearing on a more critical construction of the Statute that the County Court in the County where the child is born, [has] the sole power of making an order for its maintenance, it has been determined that the defendant cannot put himself on the jury for trial." 1 Swift's Digest (1822), p. 45. There was no right to a jury trial in a paternity proceeding prior to the adoption of the 1818 constitution and the defendant's right is not a constitutional but a statutory one conditioned upon the payment of the jury fee.

Of primary significance is the fact that the defendant here has not been denied access to the courts but has been afforded a full judicial hearing on a trial to the court. He has been given the "meaningful opportunity to be heard" which the *Boddie* case requires. "[O]ne cannot say that in our legal system the jury is a necessary component of accurate factfinding. . . . Juries are not required, and

have not been, for example, in equity cases, in workmen's compensation, in probate, or in deportation cases." *McKeiver* v. *Pennsylvania,* 403 U.S. 528, 543, 91 S. Ct. 1976, 29 L. Ed. 2d 647. Unlike the situation in the *Boddie* case, we see no fundamental interest of the defendant that is gained or lost depending on the availability of a jury trial. Cf. *United States* v. *Kras,* 409 U.S. 434, 445, 93 S. Ct. 631, 34 L. Ed. 2d 626. In these circumstances, it cannot be said that an indigent defendant is denied a meaningful hearing because he is denied a jury trial.

We are also of the opinion that the requirement for payment of a fee to obtain a jury trial does not deny the defendant constitutional equal protection of the laws. The problem is primarily one of economic equality rather than one of political equality or equality of opportunity. See Wilkinson, "The Supreme Court, the Equal Protection Clause, and the Three Faces of Constitutional Equality," 61 Va. L. Rev. 945. A free jury trial in the context of paternity proceedings to maintain a child bears little resemblance "to free speech or marriage or to those other rights, so many of which are imbedded in the First Amendment, that the Court has come to regard as fundamental . . . ." *United States* v. *Kras,* supra, 446; see *Dunn* v. *Blumstein,* 405 U.S. 330, 92 S. Ct. 995, 31 L. Ed. 2d 274 (the right to vote); *Memorial Hospital* v. *Maricopa County,* 415 U.S. 250, 94 S. Ct. 1076, 39 L. Ed. 2d 306 (right of an indigent to medical care); *Shapiro* v. *Thompson,* 394 U.S. 618, 89 S. Ct. 1322, 22 L. Ed. 2d 600 (the right to interstate travel); *Douglas* v. *California,* 372 U.S. 353, 83 S. Ct. 814, 9 L. Ed. 2d 811 (the right to vote); *Kusper* v. *Pontikes,* 414 U.S. 51, 94 S. Ct. 303, 38 L. Ed. 2d 260

(freedom of association). Nor does it involve a statutory classification based on race (*Loving* v. *Virginia*, 388 U.S. 1, 87 S. Ct. 1817, 18 L. Ed. 2d 1010) ; alienage or national origin (*Graham* v. *Richardson*, 403 U.S. 365, 91 S. Ct. 1848, 29 L. Ed. 2d 534). Paternity legislation, designed to provide for the support and maintenance of the child, is in the area of economics and social welfare. See *Kuser* v. *Orkis*, 169 Conn. 66, 71, 362 A.2d 943; see *Ortwein* v. *Schwab*, 410 U.S. 656, 93 S. Ct. 1172, 35 L. Ed. 2d 572, rehearing denied, 411 U.S. 922, 93 S. Ct. 1551, 36 L. Ed. 2d 315; *United States* v. *Kras*, supra; *Dandridge* v. *Williams*, 397 U.S. 471, 484–85, 90 S. Ct. 1153, 25 L. Ed. 2d 491. Hence "the applicable standard, in measuring the propriety of . . . [the legislature's] classification, is that of rational justification." *United States* v. *Kras*, supra. It is readily apparent that the purpose of the fee is to offset some of the costs of a jury trial and the fee is required of every civil litigant who asks for such a trial. We conclude that the jury fee serves a legitimate state interest in a paternity action and satisfies the equal protection clause of the fourteenth amendment to the federal constitution and article first, § 20, of the constitution of Connecticut.

Having determined that there was no error in the ruling of the trial court denying the defendant's motion for waiver of the jury fee whether or not the defendant was indigent, we turn now to a consideration of the defendant's claims of error arising in the course of his trial to the court. His principal contentions are two: that the trial court's conclusion that the defendant was the father of the plaintiff's child was not supported by the findings and

that the court erred in not declaring a mistrial when, the defendant claims, "inadmissible and prejudicial evidence had been brought to its attention."

As corrected by the Appellate Division, the finding reveals the following facts: The plaintiff and defendant first met in September of 1964. Within a few days thereafter they commenced to have sexual relations. This relationship continued several times each month from September or October, 1964, to sometime in the early part of April, 1969. In May, 1969, the plaintiff experienced an irregularity in her menstrual period. On February 4, 1970, she gave birth to a baby girl. When the plaintiff first became aware of her pregnancy, she informed the defendant of her condition and told him that he was the father of the child. The defendant denied paternity and thereafter said he wanted nothing to do with her condition. He severed his friendship with the plaintiff because he was not prepared to marry her. On at least one occasion he admitted to a friend that he was the father of the child.

It is the contention of the defendant that these findings establish "that (a) the defendant was the more credible party, and (b) defendant could not have been the father of plaintiff's child." With these contentions the trial court obviously did not agree and neither did the Appellate Division. Without analyzing all the details of the finding and supporting evidence, a few brief comments suffice. "Nothing in our law is more elementary than that the trier is the final judge of the credibility of witnesses and of the weight to be accorded their testimony." *Birnbaum* v. *Ives,* 163 Conn. 12, 21, 301 A.2d 262, citing *Morgan* v. *Hill,* 139 Conn. 159, 161, 90 A.2d 641. "It is for the trier of fact to pass upon the credibility of witnesses and this court, on appeal,

will not retry a case. *Salvatore* v. *Milicki*, 163 Conn. 275, 278, 303 A.2d 734; *Martin* v. *Kavanewsky*, 157 Conn. 514, 515, 255 A.2d 619; *Ramadei* v. *Saccavino*, 150 Conn. 700, 190 A.2d 489." *Lyddan* v. *Lyddan*, 166 Conn. 204, 206, 348 A.2d 674. Significant considerations for the court were the facts that the plaintiff was unable to fix the exact date of her last intercourse with the defendant other than the indefinite "beginning of April," 1969, that she found in May that she was pregnant, and that the baby was born two weeks overdue. Perhaps of greatest significance to the court was the testimony of the witness Noebel that the defendant admitted to her that he was the father of the plaintiff's child but although he was sorry about it he was not financially or mentally able at that time to do anything about it. We find no error in the conclusion of the court that the defendant was the father of the plaintiff's child.

The remaining claim of the defendant relates to the admission into evidence of testimony that a test of the plaintiff's blood had been taken to determine her blood group. Over objection from the defendant, the court permitted the plaintiff to answer ("Yes") the question: "Now, as a result of a directive from this court in connection with a motion filed by the attorney for Mr. Apuzzo, did you submit to a blood test for your child?" Although the court permitted an answer to this question, it excluded any evidence as to the results of the test. Nevertheless, the defendant, relying on the provisions of § 52-184 of the General Statutes,[4] has not only

[4] "[General Statutes] Sec. 52-184. BLOOD TESTS WHEN PATERNITY IS IN DISPUTE. In any proceeding in which a question of paternity is an issue, the court, on motion of any party, may order the mother, her child and the putative father or the husband of the mother to submit to one or more blood grouping tests, to be made by a quali-

pressed a claim that the ruling of the court was erroneous but that the court erred in not granting his motion for a mistrial on grounds that the court permitted the question as to whether a blood test had been taken to be answered and what he asserts to be the "misconduct" of the plaintiff's counsel in offering into evidence the test results which the court excluded. As did the Appellate Division, we find no merit in these claims of error.

Evidence that a blood test has been taken is clearly irrelevant in circumstances where the statute excludes the admission into evidence of the result of the test. But since in this case the test was taken as the result of a specific directive from the court granted on the defendant's motion, it could hardly affect the judgment of the court to learn that there had been a compliance with its directive and the court did properly exclude evidence of the result "unless it falls within the statutory requirement." The defendant argues that since the results were only admissible "where such results establish definite exclusion of the putative father . . . as such father," knowledge of the court that a test was made and that the results did not exclude the possibility that the defendant was the father would be prejudicial to him. We find little merit to this contention in the present case where the test was made at the direction of the court on the motion of the defendant. The court would logically assume that there was a compliance with its order in the

fied physician or other qualified person, designated by the court, to determine whether or not the putative father or the husband of the mother can be excluded as being the father of the child. The results of such tests shall be admissible in evidence only in cases where such results establish definite exclusion of the putative father or such husband as such father. The costs of making such tests shall be chargeable against the party making the motion."

absence of objection by the defendant and logically conclude that if the results did exclude the defendant the court would be made aware of that fact by the defendant at the earliest opportunity. We find no indication of any prejudice to the defendant and no error in the court's rulings which, in any event, were certainly harmless.

We find no error in the decision of the Appellate Division which found no error in the judgment of the trial court.

In this opinion the other judges concurred.