Theresa M. Ferro instituted a paternity action against Thomas Morgan alleging that he was the father of the child born to her on October 28, 1974. In her petition she alleged that she "is now or has been a recipient of public assistance." The defendant first appeared pro se below and denied paternity. Thereafter, counsel appeared for the defendant and filed a "Motion to Waive Costs of Blood Grouping Tests" to which was attached an affidavit attesting to the defendant's indigency. The court below found Morgan indigent *Page 680 
and ordered that the "cost of said test be paid by the State of Connecticut." That court denied a motion to reconsider or vacate its order, although it did clarify the order by specifically ordering the department of welfare[1] to pay the blood test expenses.
The state has appealed, alleging error in the trial court's granting of the defendant's motion to waive the costs of the blood grouping tests and in its ordering the welfare department to pay the costs of the blood grouping tests.
The state claims that the court has no authority to order the state of Connecticut, and specifically the department of social services, to pay the cost of blood grouping tests upon the motion of a defendant in a paternity action where the statute, General Statutes 46b-168,[2] specifically provides that "[t]he costs of making such tests shall be chargeable against the party making the motion."
The intention of the legislature is found not in what it meant to say but in the meaning of what it did say. Colli v. Real Estate Commission,169 Conn. 445, 452. The plaintiff suggests that the word "shall," as used in the last sentence of General *Page 681 
Statutes 46b-168, is not mandatory. We do not agree. This statute uses the words "shall" and "may," a factor which indicates an affirmative selection of words with a specific intent to make use of each word's distinctive meaning. "The words `shall' and `may' must then be assumed to have been used with discrimination and a full awareness of the difference in their ordinary meanings." Jones v. Civil Service Commission, 175 Conn. 504, 509. The word "shall" connotes that the directive is mandatory and not permissive. See Akin v. Norwalk,163 Conn. 68, 74. If read according to the commonly approved usage of its language, the statute then speaks for itself. "[T]his court is not at liberty to speculate on any supposed actual legislative intent not expressed in an appropriate manner or to restrict the ordinary import of words used in order to effectuate such supposed intent which the statute does not express." Clark v. Mulcahy,162 Conn. 332, 338. Indeed, where, as here, the statutory language is clear and unambiguous, there is no room for construction. New Haven v. United Illuminating Co., 168 Conn. 478, 485. The ruling by the trial court that the department of social services should pay the costs of the tests implied an exception to the clear language of 46b-168. While it is true that statutes general in their terms are sometimes construed to admit of implied exceptions, this is so only "when the intent of the lawmakers is clear notwithstanding the literal sense and precise letter of the statute." Busko v. DeFilippo, 162 Conn. 462, 471. This is not such an instance and this statute must be applied as its words direct. Obuchowski v. Dental Commission,149 Conn. 257, 265. Accordingly, the costs for the blood grouping test are chargeable against the defendant himself. He is obligated to pay those charges. No valid tenet of statutory construction applies that requires that the word "chargeable" be given any meaning other than its plain and ordinary meaning *Page 682 
of "liable to be . . . held responsible" or "capable of being charged to a particular account." Webster, Third New International Dictionary.
Where proceedings to establish paternity are instituted and recipients of public assistance are involved the "petition shall also be served upon the attorney general who shall be and remain a party . . . ." General Statutes 46b-160. "It is the established law of our state that the state is immune from suit unless the state, by appropriate legislation, consents to be sued." Baker v. Ives,162 Conn. 295, 298. The generally accepted doctrine is that the immunity from liability for costs enjoyed by a state as a distinct legal entity extends to state officers, boards or other agencies. 72 A.L.R.2d 1379, 1406. "The well-established principle that the sovereign (including, in this country, a state) cannot be sued without its consent is applied to exempt a state from liability for costs to which a private litigant would be subject, in the absence of a statute indicating its consent to such liability." 20 Am.Jur.2d, Costs, 32; see State v. Chapman,176 Conn. 362, 364. In addition, the department of social services is not even a party to this action. The trial court had no authority to enter the order directing that department to bear this cost. Robertson v. Robertson, 164 Conn. 140, 144.
What we have said to this point is dispositive of this appeal. There are, however; other claims made by the defendant which we will discuss. The defendant claims that both due process and equal protection required that the court below grant his motion. We do not agree.
We turn first to the defendant's due process claim which invokes both the United States and the Connecticut constitutions. "The due process clauses of the federal and state constitutions have the same *Page 683 
meaning and impose similar limitations." State v. Kyles, 169 Conn. 438, 442. There is no question that the fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." Armstrong v. Manzo,380 U.S. 545, 552. The defendant argues that to set aside the lower court's order would in effect contravene the clear implications of Boddie v. Connecticut, 401 U.S. 371. A careful reading of Boddie reveals that it was decided as it was because the state controls the sole legal means for dissolving a marriage and, therefore, indigent persons should not be denied access to the courts because of inability to pay certain prescribed filing and service of process fees. The holding in Boddie, as tersely stated by Mr. Justice Harlan's majority opinion, was: "Thus we hold only that a State may not, consistent with the obligations imposed on it by the Due Process Clause of the Fourteenth Amendment, pre-empt the right to dissolve this legal relationship without affording all citizens access to the means it has prescribed for doing so." (Emphasis added.) Id., 383. Mr. Justice Harlan also said that the court went "no further than necessary to dispose of the case before us. . ." and did "not decide that access to the courts is a right that is, in all circumstances, guaranteed by the Due Process Clause of the Fourteenth Amendment so that its exercise may not be placed beyond the reach of any individual . . . ." Id., 382-83. The precision of this holding was underscored in United States v. Kras, 409 U.S. 434. In Kras, the court, referring to its decision in Boddie, said that it had "obviously stopped short of an unlimited rule that an indigent at all times and in all cases has the right to relief without the payment of fees." Id., 450.
"[T]he requirements of due process are not fixed but depend on the nature of the case under consideration and the relative interests, both governmental *Page 684 
and private, involved." Robertson v. Apuzzo,170 Conn. 367, 372. It is important to point out that in Connecticut paternity actions are civil and not criminal proceedings, and that the general rules governing civil actions apply. Ibid. The defendant is in court, he can invoke the rules of pretrial discovery, and he can present evidence material to his defense. The defendant in a paternity action has a meaningful opportunity to be heard at a meaningful time, and due process is not violated.
Some claim seems to be made that the defendant's "liberty," within the meaning of that term under the due process clause, is involved in the trial of this action. The thread suggested here is that if the paternity issue is found against the defendant, he might be imprisoned at some later date because of his failure to pay certain money aspects of the judgment, and so refusing to have the blood test expense paid as ordered denies him the "liberty" guaranteed by the due process clause of the fourteenth amendment. This argument is wide of the mark. First, a paternity action itself does not result in imprisonment, but in an order finding paternity and liability for certain money obligations flowing from the finding of paternity. General Statutes 46b-171. Second, any deprivation of "liberty" for failure to pay a court order in a paternity action is quite a different matter from the paternity action itself. See General Statutes46b-174. Such a prospective possibility of loss of "liberty" would have to be premised upon a wilful refusal to pay such orders as opposed to mere inability to do so because of indigency.
The defendant makes much of the claim that due process requires that the expenses of the blood grouping tests be paid because, as he says in his brief, an indigent defendant is "denied a meaningful hearing when he is denied access to the one defense which can prove scientifically and conclusively that *Page 685 
he is not the father of the child." This claim, that a refusal to pay this expense amounts to a denial of his access "to what may be an absolutely crucial piece of evidence," merits some comment on just how crucial blood grouping tests are in this context. Reliable estimates vary concerning the conclusiveness of such tests. One textwriter points out that the chances of the test being inclusive are about the same as for exclusive — 49 percent versus 50 percent. McCormick, Evidence (2d Ed.) 211, pp. 518, 519. One court points out that it has been estimated that the use of tests based on blood type classification gives a man falsely accused a 50 to 55 percent chance of proving his nonpaternity. State v. Fowler, 277 N.C. 305, 308.[3]
We cannot attach the degree of crucial importance which the defendant claims to this test. The denial of payment for these tests is not violative of his due process rights in this civil action. There is no deprivation of any constitutional interest he has that requires that the court order of payment must stand on due process grounds.
In addition, the defendant claims that the lower court's order of payment for the blood grouping tests is required to be sustained on equal protection grounds. We do not agree.
The threshold question on the equal protection claim is the standard to be used for review of that claim. Is it the strict scrutiny test or the rational basis test? This indigent defendant's "right" in this civil action, to have the expense of the blood grouping tests paid for, is not considered a fundamental right as that has been regarded by the United States Supreme Court. See Robertson v. Apuzzo, 170 Conn. 367. *Page 686 
In Robertson, the Connecticut Supreme Court, in stating that the requirement of the payment of a fee to obtain a jury trial did not deny the defendant constitutional equal protection of the laws, said that this question was "primarily one of economic equality rather than one of political equality or equality of opportunity." Id., 382. In Robertson, which was also a paternity action, the court then went on to say that a free jury trial in the context of paternity proceedings bore little resemblance to rights the United States Supreme Court has regarded as fundamental. Such fundamental rights, Robertson said, included the right to vote, the right of an indigent to medical care, the right to interstate travel and freedom of association. Our Supreme Court then said that "[p]aternity legislation, designed to provide for the support and maintenance of the child, is in the area of economics and social welfare. See Kuser v. Orkis, 169 Conn. 66, 71 . . .; see Ortwein v. Schwab, 410 U.S. 656 . . ., rehearing denied, U.S. 922. . .; United States v. Kras . . . [409 U.S. 434. . .]; Dandridge v. Williams,397 U.S. 471, 481-485. . . ." Id., 383.
Although the factual pattern of the claimed right in the case at bar is different, we believe that the reasoning of Robertson applies on the equal protection claim. The standard for reviewing the equal protection claim is not the strict scrutiny test which requires justification by a compelling state interest, but rather is whether the classification (in which this defendant finds himself) is founded on a rational basis. See Laden v. Warden, 169 Conn. 540, 542-43. The rational basis is readily apparent. The legislature, in the exercise of its powers, enacted General Statutes46b-168. It has general application. It provides in part that "[t]he costs of making such *Page 687 
[blood grouping] tests shall be chargeable against the party making the motion." The purpose was to provide that any party, where a question of paternity is an issue, who wants such tests may obtain a court order to that effect, but that that party, and no one else, is to bear the expense. This statutory placing of such an expense on the party who moves for the tests provides that that cost of litigation be on the one who desires that evidence. There is no denial of equal protection under either the United States or the Connecticut constitutions.
What we have said above disposes of this appeal although we do also note that there is a grave question whether there is statutory or budgetary authority on the part of the department of social services legally to disburse the moneys ordered for these tests.
 There is error, the order to the department of welfare, now the department of social services, to pay the expenses of the blood grouping tests is vacated, and the case is remanded for further proceedings consistent with this opinion.
In this opinion PARSKEY and A. ARMENTANO, Js., concurred.