Jerome **WILLIAMS** and Roberto Santiago, on behalf of themselves and all others similarly situated

v.

Brian E. O'**NEILL** and John N. Reynolds, in their official capacities as Superior Court Judges of the State of Connecticut and all other Superior Court Judges of the State of Connecticut who are similarly situated.

Civ. No. H–80–195.

United States District Court, D. Connecticut.

Nov. 21, 1980.

Christine E. Keller, Neighborhood Legal Services, Hartford, Conn., and P. J. Pittman, New Haven Legal Assistance, New Haven, Conn., for plaintiffs.

Barney Lapp, Paul M. Shapiro, Asst. Attys. Gen., Carl Ajello, Atty. Gen., Hartford, Conn., for defendants.

## RULING ON DEFENDANTS' MOTION TO DISMISS

CLARIE, Chief Judge.

The defendants have moved to dismiss this action pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The plaintiffs, Jerome Williams and Roberto Santiago, are the defendants in two separate paternity proceedings in the Superior Court of Connecticut. They have brought this class action seeking a declaratory judgment to the effect that § 46b–168 of the Connecticut General Statutes, which requires that a party who makes a motion for blood tests in paternity actions pay the cost of those tests, is unconstitutional as it applies to indigents, because it effectively denies them access to relevant and probative evidence solely because of their indigence.

The named defendants in this action are the state judges who are presiding over the paternity actions in which the plaintiffs here are involved. They have moved to dismiss on the grounds that at the time the complaint was filed in this Court, said paternity proceedings were already underway in the state court. This fact, the defendants claim, brings this case within the scope of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny and requires dismissal of the case.

The Court finds merit in the defendants' claims and accordingly dismisses the action without prejudice.

### Jurisdiction

This is an action for declaratory relief pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, and to the Fourteenth Amendment to the United States Constitution. Jurisdiction is conferred on this Court by 28 U.S.C. § 1343(3) and (4) and by the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

### Facts

Prior to the inception of this declaratory judgment action, both Jerome Williams and Roberto Santiago were named as defendants in separate paternity actions brought in the Superior Court of Connecticut.[1]

1. Mr. Williams is the defendant in a paternity action instituted by Yvonne Hines in the Connecticut Superior Court for Geographical Area 14, at Hartford, Docket No. CV14–7912

Since both plaintiffs in said action are recipients of state welfare assistance (AFDC), the State of Connecticut was made a co-plaintiff pursuant to § 46b–160 of the Connecticut General Statutes.[2] While these two paternity actions were pending in state court, Williams and Santiago commenced this class action. Their complaint names both a proposed plaintiff class and a defendant class. The former consists of all present and future indigent defendants in paternity actions, who are or will be entitled to request a blood grouping test; the latter consists of the presiding judges in Area 14 and Area 7, as well as other judges of the Superior Courts of Connecticut.

The plaintiffs seek a finding by this Court that § 46b–168 of the Connecticut General Statutes, as interpreted and applied by the defendant class, violates their rights under 42 U.S.C. § 1983 and their constitutional rights to due process and equal protection of the law.

Section 46b–168 provides:

"In any proceeding in which a question of paternity is in issue, the court, on motion of any party, may order the mother, her child and the putative father or the husband of the mother to submit to one or more blood grouping tests, to be made by a qualified physician or other qualified person, designated by the court, to determine whether or not the putative father or the husband of the mother can be excluded as being the father of the child. The results of such tests shall be admissible in evidence only in cases where such results establish definite exclusion of the putative father or such husband as such father. The costs of making such tests shall be chargeable against the party making the motion."

It is the last sentence of § 46b–168, making the costs of blood tests chargeable

against the party who moves the Court to order the tests, that gives rise to this class action. The plaintiffs contend that this provision, as construed by the Superior Court judges of Connecticut, denies indigent paternity defendants access to "a necessary defense in establishing the presence or absence of a parent–child relationship solely because they are indigent," thereby denying them due process of law and equal protection of the laws. The plaintiffs claim this is so because the blood tests in question are both extremely expensive and potentially conclusive on the issue of paternity. Blood grouping tests cost $400 at a local blood bank. They are an important factor in defense of such an action, because they can "exclude a male from any probability of fathering a child, if the antigens in the subjects' blood fails [sic] to match."

The fact that blood grouping tests do have this crucial effect was conceded by the defendants' attorney, at the hearing on the motion to dismiss. The latter also agreed that these tests are so valuable to a man wrongly accused of paternity that lawyers would be extremely remiss in their duty to provide effective assistance of counsel, if they did not recommend blood grouping tests to clients who could afford them. Therefore, the plaintiffs argue, the refusal of the defendant judges to order state payment for blood tests for indigents deprives them of access to a form of evidence that any person of means would certainly employ, if he had cause to believe the paternity charge against him was false.

In their motion to dismiss, the defendants do not address the issue raised in the plaintiffs' constitutional challenge to § 46b–168 of the state statutes. They argue instead that because state court proceedings involving the federal plaintiffs were pending at

---

100947. Mr. Santiago is the defendant in a paternity action instituted by Awilda Torres in the Connecticut Superior Court for Geographical Area 7, at Meriden, Docket No. CV7-8012-6080. Neither case has gone to trial as of the date of this Ruling.

2. Section 46b–160 provides in pertinent part:
"... In cases involving public assistance recipients the petition shall also be served upon the attorney general who shall be and remain a party to any paternity proceeding and to any proceedings after judgment in such action ...."

the inception of this action, it is barred by the doctrine of abstention, as taught in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

### Discussion of Law

■■■ Two imperatives of our federal system compete for priority in this case. The first requires the federal courts to regard state courts as no less obligated than are the federal courts "to guard, enforce, and protect every right granted or secured by the Constitution of the United States and the laws made in pursuance thereof, whenever those rights are involved in any suit or proceeding before them." *Robb v. Connolly*, 111 U.S. 624, 637, 4 S.Ct. 544, 551, 28 L.Ed. 542 (1884). The second requires the federal courts to regard themselves as "the primary and powerful reliances for vindicating every right given by the Constitution, the laws, and treaties of the United States." F. Frankfurter and J. Landis, *The Business of the Supreme Court* 65 (1928).

The first of these imperatives has led the Supreme Court in a series of cases beginning with *Younger v. Harris, supra*, to forbid the district courts to interfere, by way of injunctions or declaratory judgments, with pending criminal or quasi–criminal proceedings in state courts. The second has led the Supreme Court, in the context of *Pullman*–abstention, to devise a complicated procedural device whereby a litigant, who has been remitted to state court for the determination of state law issues, can return to federal court for the determination of the remaining federal claims. *See England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964).

The tension between these two imperatives has never been fully resolved,[3] however a careful study of *Younger* and its progeny has convinced this Court that where the plaintiff is a defendant in a state paternity action in which the state is a

co–plaintiff and in which imprisonment is a statutorily authorized sanction for non–support if the federal plaintiff should be found to be the father, the proper course for the Court to take is to dismiss the federal action without prejudice to the plaintiffs' constitutional claims. A brief consideration of the rationale of the *Younger* line of cases will serve as an explanation for the Court's decision on this issue.

*Younger* itself involved a person who, having been indicted for violation of state law, sought in federal court to enjoin the county district attorney from prosecuting him. The Supreme Court held that federal courts should not enjoin pending state criminal prosecutions, except in unusual circumstances. It based its holding on basic principles of equity jurisprudence and on considerations of comity and federalism. *See Younger v. Harris, supra*, at 43–45, 91 S.Ct. at 750–51. In *Samuels v. Mackell*, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), a companion case to *Younger*, the Supreme Court held that the same equitable principles that render an injunction impermissible in the case of a pending state criminal prosecution also bar declaratory relief in that situation. *Id.* at 73, 91 S.Ct. at 768.

*Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), applied the principles of *Younger* to a state civil proceeding. The civil action involved in *Huffman* was a nuisance proceeding against the managers of a theatre that showed pornographic films. The Supreme Court held that in that type of proceeding, where the state is a party and where the action is "in aid of and closely related to" *id.*, at 604, 95 S.Ct. at 1208, criminal statutes, the federal courts should not interfere with the state proceeding. In elaborating upon the federalism basis for noninterference in state judicial proceedings, the Court said:

---

**3.** *See Huffman v. Pursue*, 420 U.S. 592, 606 and n.18 (opinion of the court), and 615–617, 95 S.Ct. 1200, 1209, and n.18, and 1213–14, 43 L.Ed.2d 482 (Brennan, J., dissenting). *See also* Justice Brennan's dissents in *Juidice v. Vail*, 430 U.S. 327, 342–344, 97 S.Ct. 1211, 1220–21, 51 L.Ed.2d 376 (1977), and *Trainor v. Hernandez*, 431 U.S. 434, 455–456, 97 S.Ct. 1911, 1923–24, 52 L.Ed.2d 486 (1977).

" ... interference with a state judicial proceeding prevents the state not only from effectuating its substantive policies, but also from continuing to perform the separate function of providing a forum competent to vindicate any constitutional objections interposed against those policies. Such interference also results in duplicative legal proceedings, and can readily be interpreted 'as reflecting negatively upon the state court's ability to enforce constitutional principles.' Cf. *Steffel v. Thompson*, [415 U.S. 452], at 462, 94 S.Ct. 1209, at 1217, 39 L.Ed.2d 505" *id.*, at 604, 95 S.Ct. at 1208.

The Court noted that Article VI of the Constitution "declares that 'the Judges in every state shall be bound' by the Federal Constitution, laws, and treaties," *id.*, at 611, 95 S.Ct. at 1211, and refused "to base a rule on the assumption that state judges will not be faithful to their constitutional responsibilities." *Id.*, at 611, 95 S.Ct. at 1211.

In two later cases, *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977), and *Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977), the Supreme Court relied on comity, federalism, and " 'the principle that state courts have the solemn responsibility equally with the federal courts' to safeguard constitutional rights," *Trainor v. Hernandez*, 431 U.S., at 443, 97 S.Ct. at 1917 (quoting *Steffel v. Thompson, supra*, 415 U.S. at 460–461, 94 S.Ct. at 1216), to mandate the expansion of *Younger*–abstention into other civil actions to which the state is a party. *See also Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979).

In the instant case, as in *Huffman, Juidice*, and *Hernandez*, the state is directly involved in the pending state action. Here, as in *Hernandez*, the state court proceeding plays "an important role in safeguarding

the fiscal integrity of the [state's] public assistance programs." *Trainor v. Hernandez*, 431 U.S., at 450, 97 S.Ct. at 1921 (Blackmun, J., concurring). Here, as in *Huffman* and *Juidice*, the state stands ready to use penal sanctions if circumstances so require–in this case each of the federal plaintiffs may be sent to prison until he complies with a support order should he be found guilty in the paternity action. *See* Conn.Gen.Stat. § 46b–171. In this case, as in all those previously cited, the tribunal hearing the state case is empowered and required to pass on any constitutional challenge raised by any party to the litigation. *See* United States Constitution, Article VI, cl. 2; Constitution of the State of Connecticut, Article 11, § 1 (1965).[4]

Since the Court finds that this case falls within the scope of *Younger* and its progeny, it is dismissing the case without prejudice. In doing so, however, the Court is in no way passing judgment on the merits of the plaintiffs' constitutional claims. Indeed, the very factors that bring this case under the sway of *Younger*–namely: (1) that the state is a co–plaintiff in the paternity action; (2) that state law specifically provides for imprisonment if the state defendant is "found guilty," Conn.Gen.Stat. § 46b–171, and fails to comply with a support order; and (3) that a unique moral stigma attaches to one found guilty in a paternity action–all of these criteria lend strength to the plaintiffs' constitutional arguments.

In a variety of contexts the Supreme Court has held that "differences in access to the instruments needed to vindicate legal rights, when based upon the financial situation of the defendant, are repugnant to the Constitution." *Roberts v. LaVallee*, 389 U.S. 40, 42, 88 S.Ct. 194, 195, 19 L.Ed.2d 41 (1967). *See, e. g., Griffin v. Illinois*, 351

---

4. At one time there was some question as to the circumstances in which the lower courts of Connecticut would decide constitutional questions. *See State v. Muolo*, 119 Conn. 323, 176 A. 401 (1935), and *Helm v. Welfare Commissioner*, 32 Conn.Sup. 595, 348 A.2d 317, 37 Conn.L.J. No. 24, at 12 (1975); but see *Doe v. Maher*, 414 F.Supp. 1368, 1382–83 (D.Conn.

1976) (Newman, J., concurring in the result), vacated 432 U.S. 526, 97 S.Ct. 2474, 53 L.Ed.2d 534 (1977). The Court assumes that under the state court reorganization effective July 1, 1978, the state superior court is fully empowered to hear and decide constitutional questions. See Conn.Gen.Stat. § 51 ·164s, *et seq.*

U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956) ("There can be no equal justice where the kind of trial a man gets depends on the amount of money he has." (plurality opinion of Black, J.)); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); but cf. *United States v. Kras,* 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973); *Scott v. Illinois,* 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979). Furthermore a number of states have faced the issue raised by the plaintiffs here and decided that the state was obliged to bear the costs of blood tests for indigent paternity defendants. *See Commonwealth v. Possehl,* 355 Mass. 575, 246 N.E.2d 667 (1969); *Franklin v. District Court,* 194 Colo. 189, 571 P.2d 1072 (1977); *State ex rel. Graves v. Daugherty,* 266 S.E.2d 142 (W.Va. 1980). Other courts have addressed the more general issue, such as the right of an indigent paternity defendant to counsel, and found such a right to exist. *See,* for example, *Reynolds v. Kimmons,* 569 P.2d 799 (Alas.1977); *Salas v. Cortez,* 24 Cal.3d 22, 154 Cal.Rptr. 529, 593 P.2d 226 (1979), *cert. den.* 444 U.S. 900, 100 S.Ct. 209, 62 L.Ed.2d 136; *Artibee v. Cheboygan Circuit Judge,* 397 Mich. 54, 243 N.W.2d 248 (1976); *Hepfel v. Bashaw,* 279 N.W.2d 341 (Minn. 1979).

While the rationales of these cases differ one from another, common to them all is the theme that a paternity action, even when it is called a civil action, is different from other lawsuits, in ways that require the state to afford the defendant those protections normally required only in criminal cases. In *State ex rel. Graves v. Daugherty,* for example, the West Virginia Supreme Court dismissed the state's claim that paternity actions are purely civil in nature with the words, "We eschew the rubric of 'criminal' versus 'civil' in determining what process is fair. The characteristics and ramifications of a process, rather than its label, spawn due process requirements." Id., 144. The court went on to require the state to waive the cost of blood grouping tests in the case of an indigent paternity defendant, basing that require-ment on the Equal Protection Clause of the Fourteenth Amendment and on *Griffin v. Illinois, supra.*

Other courts have invoked the interest the child at issue in a paternity case has in a correct paternity determination, the compelling interest that the defendant has in being free from an incorrect imposition of the parent child relationship on him, and the *res judicata* effect a paternity determination has on subsequent criminal actions as reasons for requiring enhanced protection of the accused in paternity actions. Also the predominant role that the state typically plays in the prosecution of a paternity action has been held to justify treating a paternity action as sui generis or quasi–criminal. *See Salas v. Cortez, supra, Reynolds v. Kimmons, supra,* and *Hepfel v. Bashaw, supra.*

It is true that the Connecticut Supreme Court has held that paternity actions are civil in nature. *Robertson v. Apuzzo,* 170 Conn. 367, 365 A.2d 824, *cert. den.* 429 U.S. 852, 97 S.Ct. 142, 50 L.Ed.2d 126 (1976). It is also true that the Appellate Session of the Superior Court has held that indigent paternity defendants have no constitutional right to a waiver of the cost of blood tests, *Ferro v. Morgan,* 35 Conn.Sup. 679, 406 A.2d 873, 41 Conn.L.J. No. 17, at 3 (1979), *certification denied,* 177 Conn. 753, 399 A.2d 526 (1979). But since a denial of certification by the Connecticut Supreme Court does not necessarily indicate approval of the result or of the reasoning below, *State v. Doscher,* 172 Conn. 592, 376 A.2d 359 (1977), the highest court of Connecticut has not yet addressed itself to the claim made by the plaintiffs in this case.

The Court is confident that if it should become necessary for the plaintiffs to bring their constitutional challenge to § 46b–168 through the state appellate process, those courts, like the trial court, will be faithful to their "solemn responsibility," *Steffel v. Thompson, supra,* 415 U.S. at 460, 94 S.Ct. at 1216, "to guard, enforce, and protect every right granted or secured by the Constitution." *Robb v. Connolly, supra,* 111 U.S. at 637, 4 S.Ct. at 551. If the decision

of the Connecticut Supreme Court is adverse to the plaintiffs' constitutional claims, that decision can be reviewed by the United States Supreme Court, pursuant to 28 U.S.C. § 1257(2). Thus dismissal of this action neither bars consideration of the plaintiffs' constitutional claims in state court nor does it bar review of an adverse ruling by a federal court, in this case by the United States Supreme Court.

Accordingly, the action is dismissed without prejudice to the plaintiffs' constitutional claims. SO ORDERED.

