BLANCHE KUSER *v.* WALTER ORKIS

HOUSE, C. J., LOISELLE, MACDONALD, BOGDANSKI and LONGO, Js.

Argued April 9—decision released July 1, 1975

*Harold B. Yudkin,* for the appellant (defendant).

*Edmund C. Walsh,* assistant attorney general, with whom, on the brief, were *Carl R. Ajello,* attorney general, and *Paul M. Shapiro,* assistant attorney general, for the appellee (plaintiff).

HOUSE, C. J. The plaintiff, Blanche Kuser, began this action in 1963 pursuant to the provisions of what was then chapter 911 of the General Statutes, alleging that the defendant, Walter Orkis, was the father of her child born May 20, 1962, which child, when born, was a bastard, and that she was again pregnant with child begotten by the defendant, which child when born would also be a bastard. The plaintiff sought the arrest of the defendant and other relief as provided by statute. Pursuant to § 52-435, a provision of chapter 911, a warrant was issued by the plaintiff's attorney as a commissioner of the Superior Court for the arrest of the defendant. The defendant was arrested, brought before a judge of the Circuit Court on October 2,

1963, and released upon posting a $500 bond pending a hearing on probable cause. On the same day as the arrest, he was also served personally with a true and attested copy of the writ, summons and complaint in the present action in response to which he entered a general appearance on December 10, 1963.

Thereafter, in January and February, 1964, the defendant successively demurred to the complaint, moved for summary judgment, and moved to dismiss the complaint, all predicated on the grounds that §§ 52-435, 52-436 and 52-443 of the bastardy statutes as they then read violated the fourteenth amendment to the constitution of the United States, that § 52-443 violated the thirteenth amendment to the constitution of the United States which forbids involuntary servitude, and that these same sections of the statutes violated the constitution of Connecticut, article first, §§ 8, 9, 10 and 12. In July, 1965, the court (*O'Brien, J.*) overruled the demurrer and dismissed the motion for summary judgment and the motion to dismiss.

On September 10, 1965, the defendant closed the pleadings by filing his answer which denied the essential allegations of the plaintiff's complaint. Ten days later, on September 20, 1965, the plaintiff claimed the case for the trial list and it was accordingly placed on the docket as a court case. General Statutes § 52-215. Subsequently, on December 8, 1965, the defendant, acting by his present counsel, entered a second general appearance in the case and on March 15, 1966, the plaintiff again claimed the case for the trial list. In August, 1967, the plaintiff amended her complaint to state that the birth of the second child referred to in her complaint

had occurred on September 27, 1963.[1] Thereafter, the case lay dormant for five years except that it was by the court discontinued from the docket in 1969, 1970, 1971 and 1972, and each time restored to the docket on motion by counsel. On September 26, 1972, the defendant filed a motion pursuant to the provisions of § 94 of the Practice Book to erase the case from the docket on the reasserted ground that § 52-435 was unconstitutional. The court denied this motion, commenting on the "innumerable motions, pleadings, continuances and changes of counsel for both parties" and the four discontinuances and restorations to the docket. It pertinently observed in its memorandum of decision: "If a like amount of time is spent on this case in the future, the infant subjects of the suit will have reached the age of majority." Three days after filing his motion to erase, the defendant filed a "Not Guilty" answer to the complaint as it had been amended five years previously on August 14, 1967, and also filed a claim for trial by a jury of six. The plaintiff thereupon moved to strike the claim for a jury and the motion was granted on November 27, 1972. The case was reached for trial to the court in July, 1973. The court found that the defendant was the father of the older child and ordered the defendant to pay to the plaintiff medical expenses, counsel fees, costs and support and maintenance for that child until he reached age eighteen. From this judgment the defendant appealed to the Appellate Division of the Court of Common Pleas, claiming error in the court's overruling of his demurrer, dismissing his motion for summary judgment and his

[1] With her complaint, the plaintiff, as required by § 52-435, had filed a doctor's certificate certifying that he had examined the plaintiff and found her to be pregnant, and that the "expected date of confinement is October 4, 1963."

motion to dismiss, denying his motion to erase and granting the plaintiff's motion to strike his jury claim. The Appellate Division found no error in the trial court's judgment, and this court granted the defendant's petition for certification.

On his appeal to this court the defendant has made no attack on the merits of the court's conclusions as to the defendant's paternity and the provisions of its orders for payment of expenses and support for the older child but has pressed the claims originally made to the trial court by his demurrer, motion to dismiss and motion to erase. His basic claim is a jurisdictional one—that because the procedure by which the action was commenced pursuant to the provisions of § 52-435— the civil arrest of the defendant—was unconstitutional, the trial court lacked jurisdiction over him, and the unconstitutionality of the initial arrest rendered the final judgment invalid.

Under now repealed § 52-435 of the General Statutes governing bastardy proceedings, a commissioner of the Superior Court had authority, upon complaint under oath by the mother, to issue a warrant and cause the arrest of the putative father. In most cases, as in the present case, the commissioner issuing the warrant was also the plaintiff's attorney. Section 52-435 was repealed by 1965 Public Acts, No. 406, § 8, and what is now § 52-435a substituted for it. This statute omits any authorization for the arrest of the putative father and now provides that paternity proceedings shall be initiated upon the verified petition of the mother filed in the Court of Common Pleas which shall cause a summons to be issued requiring the putative father to appear and show cause why the prayer of the petition should not be granted.

The Appellate Division of the Court of Common Pleas agreed with the defendant's contention that the procedure leading to his arrest was unconstitutional because the determination of probable cause to issue the arrest warrant was not made by a neutral and detached magistrate; *Johnson* v. *United States,* 333 U.S. 10, 14, 68 S. Ct. 367, 92 L. Ed. 436; but concluded that, under the circumstances, this did not render the trial court's final judgment invalid. It found no error in the judgment of the trial court and dismissed the appeal.

The purpose of what were formerly called bastardy actions and are now called paternity proceedings is to relieve the public of the burden of supporting an illegitimate child and to provide the mother with assistance in carrying out her obligation of support. *State* v. *Wolfe,* 156 Conn. 199, 203, 239 A.2d 509; *Pelak* v. *Karpa,* 146 Conn. 370, 372, 151 A.2d 333. It is the long-established policy of this state to require a father to support his illegitimate child. *State* v. *Wolfe,* supra.

Historically, the action was criminal in form but civil in nature. It is fundamental, however, that the rules governing civil actions apply. As this court observed in *Pelak* v. *Karpa,* supra: "It is settled law that our bastardy procedure (c. 911), while permitting the arrest of the body of the defendant for purposes of security, is fundamentally a civil action, to which the general rules governing civil actions are applicable." See cases therein cited. The distinction between a body arrest of the defendant for purposes of security and service of civil process to obtain jurisdiction in personam of him was well illustrated by the decision in *Copes* v. *Malacarne,* 118 Conn. 304, 172 A. 89. In

that case the defendant pleaded in abatement that service made on him was not sufficient to institute a bastardy action as his body was not actually arrested and the only way in which the process was served was by leaving it at his usual place of abode. This court found no error in the decision of the trial court overruling the plea in abatement, noting that "[t]he arrest and detention of the body are for security and not to give jurisdiction" and "[i]t follows that the suit was commenced . . . upon the day when the copy of the process was left at the usual place of abode of the defendant." Id., 306.

In the present case, personal jurisdiction over the defendant was obtained when he was served with a true and attested copy of the writ, summons and complaint. This service of process gave the court in personam jurisdiction and was valid for that purpose regardless of any irregularity or deficiency in the body arrest of the defendant for security purposes, which procedure was not necessary to establish jurisdiction. *Copes* v. *Malacarne,* supra. Assuming, arguendo, that the arrest procedure permitted in 1963 by § 52-435 was unconstitutional, that circumstance is unrelated to the in personam jurisdiction of the court acquired by proper service of civil process on the defendant. If any doubt remained as to the court's jurisdiction over the defendant, it was removed by the two general appearances which he entered first on December 10, 1963, and again on December 8, 1965. By his general appearances he submitted himself to the jurisdiction of the court. Practice Book, Form No. 527; *Fine* v. *Wencke,* 117 Conn. 683, 684, 169 A. 58; see *Beardsley* v. *Beardsley,* 144 Conn. 725, 729, 137 A.2d 752; *Pavlick* v. *Meriden Trust & Safe*

*Deposit Co.,* 139 Conn. 733, 737, 97 A.2d 265; *Paiwich* v. *Krieswalis,* 97 Conn. 123, 127, 115 A. 720; Stephenson, Conn. Civ. Proc. (2d Ed.) §§ 4, 53.

The defendant, by way of several assignments of error, claims that § 52-443 as it read in 1963[2] and as it remains substantially unchanged is unconstitutional in that it violates the thirteenth amendment to the constitution of the United States prohibiting involuntary servitude, and also violates the due process and equal protection clauses of the fourteenth amendment and the corresponding sections of article first, §§ 8, 9, 10, 12, of the constitution of Connecticut in that it makes an arbitrary distinction in denying to defendants in paternity proceedings privileges which are allowed to other prisoners on civil process.

The defendant has been free on bail since the date of his arrest under the original warrant. The prospect of his incarceration under § 52-443 is, at this point, entirely theoretical and problematical. It is fundamental that no one will be heard to question the constitutionality of a statute unless he is adversely affected by it. *Grievance Committee* v. *Dacey,* 154 Conn. 129, 147, 222 A.2d 339; *State* v. *Hurliman,* 143 Conn. 502, 506, 123 A.2d 767; *State*

[2] "[General Statutes] Sec. 52-443. CONTINUED LIABILITY OF PERSON COMMITTED FOR FAILURE TO COMPLY WITH ORDER. No person committed to jail for failure to comply with an order of the court as provided in sections 52-435, 52-440 and 52-442, or any of them, shall be entitled to any of the privileges allowed other prisoners on civil process, or to take the oath provided for poor debtors, within six months from the date of such commitment, but shall be kept at hard labor during such six months; and the mother of such bastard child, the state or the town chargeable with its support may, at any time after the liberation of such prisoner, or after his taking said oath, recover the sum or sums due from him in pursuance of such order of court."

v. *Donahue*, 141 Conn. 656, 665, 109 A.2d 364, cert. denied, 349 U.S. 926, 75 S. Ct. 775, 99 L. Ed. 1257; *McAdams* v. *Barbieri*, 143 Conn. 405, 411, 123 A.2d 182. "Persons wishing to contest, on constitutional grounds, the validity of legislation must be able to show, not only that the legislation is invalid, but also that they have sustained, or are in immediate danger of sustaining, some direct injury as the result of its enforcement . . . . [T]he power of courts to pass upon the constitutionality of statutes arises only when the interests of litigants require the use of this judicial authority for their protection against actual interference; a hypothetical threat is not enough." 16 Am. Jur. 2d, Constitutional Law, § 120, citing *Lehon* v. *Atlanta*, 242 U.S. 53, 37 S. Ct. 70, 61 L. Ed. 145. Since the defendant has not shown that he is in immediate danger of being adversely affected by the provisions of § 52-443, this court will not consider the issue of its constitutionality. In this context, it is, however, pertinent to note that the penalties provided by § 52-443 do not result directly from an adjudication in paternity proceedings but, as the title of the statute indicates, would be imposed "for failure to comply with an order of the court." It is not to be assumed that a defendant will fail to comply with orders of the court.

The defendant next claims error in the ruling of the court granting the plaintiff's motion to strike his claim for a jury trial. As we have noted, the plaintiff in 1967 amended her complaint to indicate that on September 27, 1963, she had given birth to the child with whom she was pregnant when the action was commenced. The complaint had alleged that she was pregnant with a second child by the defendant, and that that child, when born, would be a

bastard, and with the complaint she had filed the required medical certificate that the expected date of confinement was October 4, 1963. It was five years later when the defendant, in September of 1972, answered the amended complaint and filed his claim for a jury of six, which claim was stricken by the court on motion by the plaintiff. The precise pleadings involved are of particular significance. The only new fact alleged by the plaintiff's amendment to the complaint was that the child had been born on a specified date. The only answer filed by the defendant in response to this amendment was "Not Guilty." Quite obviously no new issue was framed by these pleadings.

The thrust of the defendant's argument is that § 52-215 provides in pertinent part that "[w]hen . . . an issue of fact is joined, the case may, within ten days after such issue of fact is joined, be entered in the docket as a jury case upon the request of either party," and, accordingly, he should have been allowed to claim a jury trial when he did. The court, in its memorandum of decision on the plaintiff's motion to strike the defendant's jury claim, noted that the amendment to the complaint, merely to state the date of the actual birth of the child, did not enlarge the existing issues nor did it raise any new issues and concluded that the amendment did not create any right in the defendant to claim a jury trial. The court also noted that by not claiming a jury trial within ten days of the closing of the issues on the original complaint the defendant had waived his right to a trial by jury. The court's decision is amply supported by the facts of this case and our prior decisions. See *Leahey* v. *Heasley*, 127 Conn. 332, 16 A.2d 609; *Atta* v. *Cutner*, 95 Conn. 576, 578, 111 A. 847; *Rowell* v. *Ross*, 91 Conn. 702,

101 A. 333. The court properly concluded that the amendment raised no new issues of fact and "brought no such change into the situation as to revive a right of election for a jury trial which had already definitely lapsed." *Atta* v. *Cutner,* supra, 577. There was no error in its ruling.

The defendant's remaining assignments of error, not having been briefed, are considered abandoned. *Brecciaroli* v. *Commissioner of Environmental Protection,* 168 Conn. 349, 352, 362 A.2d 948; *Waldron* v. *Raccio,* 166 Conn. 608, 609, 353 A.2d 770.

There is no error.

In this opinion the other judges concurred.