BOARD OF EDUCATION OF THE CITY OF HARTFORD *v.*
CONNECTICUT BOARD OF LABOR RELATIONS ET AL.
(13008)

PETERS, C. J., HEALEY, SHEA, SANTANIELLO and CALLAHAN, Js.

*(One justice dissenting)*

Argued March 11—decision released September 1, 1987

*Donald V. Romanik,* assistant corporation counsel, with whom, on the brief, was *Richard H. Goldstein,* corporation counsel, for the appellant (plaintiff).

*Joseph M. Celentano,* assistant counsel, for the appellee (named defendant).

*James C. Ferguson,* for the appellees (defendants Hartford Federation of Dental Hygienists et al.).

SANTANIELLO, J. This is an appeal from the judgment of the Superior Court dismissing the plaintiff's administrative appeal from the decision of the named defendant, Connecticut state board of labor relations, which held that the plaintiff had committed a refusal to bargain and a prohibited practice in violation of General Statutes § 7-470.[1] We dismiss the appeal as moot.

[1] "[General Statutes] Sec. 7-470. PROHIBITED ACTS OF EMPLOYERS AND EMPLOYEE ORGANIZATIONS. (a) Municipal employers or their representatives or agents are prohibited from: (1) Interfering, restraining or coercing employees in the exercise of the rights guaranteed in section 7-468; (2) dominating or interfering with the formation, existence or administration of any employee organization; (3) discharging or otherwise discriminating against an employee because he has signed or filed any affidavit, petition or complaint or given any information or testimony under sections 7-467 to 7-477, inclusive; (4) refusing to bargain collectively in good faith with an employee organization which has been designated in accordance with the provisions of said sections as the exclusive representative of employees in an appropriate unit; (5) refusing to discuss grievances with the representatives of an employee organization designated as the exclusive representative in an appropriate unit in accordance with the provisions of said sections; (6) refusing to comply with a grievance settlement, or arbitration settlement, or a valid award or decision of an arbitration panel or arbitrator rendered in accordance with the provisions of section 7-472.

"(b) Employee organizations or their agents are prohibited from: (1) Restraining or coercing (A) employees in the exercise of the rights guaranteed in subsection (a) of section 7-468, and (B) a municipal employer in the

The parties have stipulated to the following facts. The plaintiff, board of education of the city of Hartford (board of education), and the city of Hartford (city), are employers within the meaning of the Municipal Employee Relations Act (act). General Statutes §§ 7-467 through 7-477. The defendants, the Hartford Federation of Dental Hygienists, the Hartford Federation of School Nurses and the Hartford Federation of School Secretaries (unions), are employee organizations within the meaning of the act.

Prior to June, 1980, when the unions were affiliated with the Hartford Federation of Teachers, each of the defendants represented its respective group, as an independent organization, in collective bargaining with the board of education. In February, 1981, the unions began negotiations with the board of education for successor agreements to their expired contracts. Upon the conclusion of the negotiations, each union ratified its respective contract. After the unions' ratifications, the board of education submitted the three contracts to the city's office of corporation counsel on June 16, 1982, and, on June 22, 1982, approved the agreements

selection of his representative for purposes of collective bargaining or the adjustment of grievances; (2) refusing to bargain collectively in good faith with a municipal employer, if it has been designated in accordance with the provsions of sections 7-467 to 7-477, inclusive, as the exclusive representative of employees in an appropriate unit; (3) refusing to comply with a grievance settlement, or arbitration settlement, or a valid award or decision of an arbitration panel or arbitrator rendered in accordance with the provisions of section 7-472.

"(c) For the purposes of said sections, to bargain collectively is the performance of the mutual obligation of the municipal employer or his designated representatives and the representative of the employees to meet at reasonable times, including meetings appropriately related to the budget-making process, and confer in good faith with respect to wages, hours and other conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party, but such obligation shall not compel either party to agree to a proposal or require the making of a concession."

pending approval by the corporation counsel's office. The corporation counsel determined that the contracts should be submitted to the city's Court of Common Council (common council)[2] for approval, pursuant to General Statutes § 7-474. The contracts were referred back to the corporation counsel for review, and during this review process several changes were recommended. After the recommendations were discussed with the unions, several of those changes were incorporated into the contracts. On July 12, 1982, the contracts were approved by the common council.

Shortly thereafter, the unions filed separate complaints with the named defendant, Connecticut board of labor relations (labor board), alleging that the board of education had engaged in practices prohibited by General Statutes § 7-470 because the board of education: (1) had abrogated the unions' authority to enter into binding collective bargaining agreements with the board of education directly; (2) had failed to implement the terms of their contracts by claiming that the agreements were not binding until the contracts had been approved by the common council; and (3) had submitted the contracts in their entirety to the common council for approval even though only a limited number of provisions may have required council approval. These cases were consolidated.

The question before the labor board, in essence, was whether the board of education had committed a practice prohibited by the Municipal Employee Relations Act by refusing to implement the contracts, which had been ratified, when it had submitted those agreements to the common council for approval. Relying primarily on General Statutes §§ 7-474 (b) and (d),[3] and

---

[2] The Court of Common Council is the legislative body for the city of Hartford.

[3] "[General Statutes] Sec. 7-474. NEGOTIATIONS AND AGREEMENTS BETWEEN MUNICIPALITY AND EMPLOYEE REPRESENTATIVES. FEDERAL

10-220,[4] the labor board initially reasoned that the board of education did not have to submit for approval those contract provisions over which the board of edu-

APPROVAL. ELECTIVE BINDING ARBITRATION; PROCEDURE; APPORTIONMENT OF COSTS. . . .

"(b) Any agreement reached by the negotiators shall be reduced to writing. Except where the legislative body is the town meeting, a request for funds necessary to implement such written agreement and for approval of any provisions of the agreement which are in conflict with any charter, special act, ordinance, rule or regulation adopted by the municipal employer or its agents, such as a personnel board or civil service commission, or any general statute directly regulating the hours of work of policemen or firemen or any general statute providing for the method or manner of covering or removing employees from coverage under the Connecticut municipal employees' retirement system or under the policemen and firemen survivors' benefit fund shall be submitted by the bargaining representative of the municipality within fourteen days of the date on which such agreement is reached to the legislative body which may approve or reject such request as a whole by a majority vote of those present and voting on the matter; but, if rejected, the matter shall be returned to the parties for further bargaining. Failure by the bargaining representative of the municipality to submit such request to the legislative body within such fourteen-day period shall by considered to be a prohibited practice committed by the municipal employer. Such request shall be considered aprpoved if the legislative body fails to vote to approve or reject such request within thirty days of the end of the fourteen-day period for submission to said body. Where the legislative body is the town meeting, approval of the agreement by a majority of the selectmen shall make the agreement valid and binding upon the town and the board of finance shall appropriate or provide whatever funds are necessary to comply with such collective bargaining agreement. . . .

"(d) If the municipal employer is a district, school board, housing authority or other authority established by law, which by statute, charter, special act or ordinance has sole and exclusive control over the appointment of and the wages, hours and conditions of employment of its employees, such district, school board, housing authority or other authority, or its designated representatives, shall represent such municipal employer in collective bargaining and shall have the authority to enter into collective bargaining agreements with the employee organization which is the exclusive representative of such employees, and such agreements shall be binding on the parties thereto, provided, where any provisions of any such agreement require federal approval, such provisions shall be binding upon receipt of such approval, and no such agreement or any part thereof shall require approval of the legislative body of the municipality. . . ."

[4] "[General Statutes (Rev. to 1983)] Sec. 10-220. DUTIES OF BOARDS OF EDUCATION. (a) Each local or regional board of education shall maintain

cation had sole and exclusive control, but only those provisions over which it lacked such control. After examining the Hartford city charter, the labor board

good public elementary and secondary schools, implement the educational interests of the state as defined in section 10-4a and provide such other educational activities as in its judgment will best serve the interests of the school district; provided any board of education may secure such opportunities in another school district in accordance with provisions of the general statutes and shall give all the children of the school district as nearly equal advantages as may be practicable; shall have charge of the schools of its respective school district; shall make a continuing study of the need for school facilities and of a long-term school building program and from time to time make recommendations based on such study to the town; shall have the care, maintenance and operation of buildings, lands, apparatus and other property used for school purposes; shall determine the number, age and qualifications of the pupils to be admitted into each school; shall employ and dismiss the teachers of the schools of such district subject to the provisions of sections 10-151 and 10-158a; shall designate the schools which shall be attended by the various children within the school district; shall make such provisions as will enable each child of school age, residing in the district to attend some public day school for the period required by law and provide for the transportation of children wherever transportation is reasonable and desirable, and for such purpose may make contracts covering periods of not more than five years; may arrange with the board of education of an adjacent town for the instruction therein of such children as can attend school in such adjacent town more conveniently; shall cause each child seven years of age and over and under sixteen living in the school district to attend school in accordance with the provisions of section 10-184, and shall perform all acts required of it by the town or necessary to carry into effect the powers and duties imposed by law.

"(b) The board of education of each local or regional school district shall, with the participation of parents, students, school administrators, teachers, citizens, local elected officials and any other individuals or groups such board shall deem appropriate, prepare a statement of educational goals for such local or regional school district. The statement of goals shall be consistent with statewide goals pursuant to subsection (c) of section 10-4 and shall be submitted to the state board of education on or before July 1, 1981. The state board of education shall review each such statement of goals and approve such statement of goals only as it pertains to the statewide goals developed in accordance with subsection (c) of section 10-4. Every five years thereafter, the local or regional board of education shall review and if necessary update such statement of goals. The local or regional board of education shall submit such goals to the state board of education, which shall review each such statement of goals and approve such statement of goals only as it pertains to the statewide goals developed in accordance with sub-

determined that the board of education did not have sole and exclusive control over pension benefits, and thus the contract provisions concerning those benefits had to be submitted to the common council for approval. The labor board, however, opined that the board of education did have sole and exclusive control over insurance benefits and therefore did not have to submit those provisions for approval before implementation. The labor board concluded that: (1) collective bargaining agreements need not be submitted *in their entirety* for approval where only part of the contracts concern subject matter over which the board of education lacks sole and exclusive control; rather, only those parts of the agreements over which the board of education lacked control had to be submitted for approval; and (2) the board of education had committed a refusal to bargain and a prohibited practice when it so conditioned implementation of the entire contracts upon the approval of the common council. Accordingly, the labor board ordered the board of education to "[c]ease and desist from conditioning implementation of a collective bargaining agreement previously negotiated and agreed to, upon the submission and approval of the collective bargaining agreement to the legislative body of the municipality, where only a portion of the collective bargaining agreement concerned a subject matter of which the [board of education] lacked sole and exclusive control (i.e. pensions)."

The board of education appealed the labor board's decision to the Superior Court, pursuant to General

section (c) of section 10-4. Each local or regional board of education shall develop student objectives which relate directly to the statement of educational goals prepared pursuant to this subsection and which identify specific expectations for students in terms of skills, knowledge and competence. On September 1, 1982, and anually thereafter, at such time and in such manner as the commissioner of education shall prescribe, each local or regional board of education shall attest to the state board of education that program offerings and instruction are based on stated educational goals and student objectives pursuant to this subsection."

Statutes § 4-183, claiming, inter alia, that the labor board incorrectly decided that: (1) the contracts between the board of education and the unions did not have to be submitted in their entirety to the common council, but only those provisions over which the board of education lacked sole and exclusive control; and (2) the board of education had sole and exclusive control over insurance benefits, and therefore did not have to submit the provisions concerning those benefits to the common council for approval.

After reviewing the labor board's decision, the trial court concluded that the labor board had correctly decided that the board of education had committed a prohibited practice by submitting the contracts in their entirety to the common council for approval. Additionally, the court held that the labor board had been correct in determining that the board of education had sole and exclusive control over insurance benefits, and thus did not have to submit the provisions concerning those benefits to the common council for approval. Consequently, the court dismissed the board of education's administrative appeal.

The board of education appealed the judgment of the trial court to the Appellate Court, and this court transferred the case to itself pursuant to Practice Book § 4023. On appeal, the board of education claims that the trial court erred in dismissing the appeal because the labor board's decision violated the relevant statutory and charter provisions and was clearly erroneous in view of the evidence. Specifically, it argues that the decision of the labor board that the board of education had sole and exclusive control over insurance benefits, and that therefore those provisions did not have to be submitted to the common council for approval, violated the Hartford city charter. The board of education, however, does *not* challenge the labor board's ultimate determination that the board of education committed

a prohibited practice by conditioning the implementation of all three contracts upon the common council's approval.

Initially, we note that the original contracts which underlie this appeal have since expired and the board of education and the defendant unions have negotiated and implemented another set of successor agreements, apparently without incident. We therefore must, as a threshold matter, determine whether the present appeal is moot. See *Hartford Principals' & Supervisors' Assn.* v. *Shedd,* 202 Conn. 492, 496, 522 A.2d 264 (1987); *Connecticut Foundry Co.* v. *International Ladies Garment Workers Union,* 177 Conn. 17, 19, 411 A.2d 1 (1979).

" 'It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. *Connecticut State Employees Assn.* v. *AFSCME,* 188 Conn. 196, 199, 448 A.2d 1341 (1982); *Waterbury Hospital* v. *Connecticut Health Care Associates,* 186 Conn. 247, 440 A.2d 310 (1982).' *State* v. *Macri,* 189 Conn. 568, 569, 456 A.2d 1203 (1983); see also *Shays* v. *Local Grievance Committee,* 197 Conn. 566, 571–74, 499 A.2d 1158 (1985)." *Hartford Principals' & Supervisors' Assn.* v. *Shedd,* supra, 496–97; *Reynolds* v. *Vroom,* 130 Conn. 512, 515, 36 A.2d 22 (1944). "In the absence of an actual and existing controversy for us to adjudicate in any sense of the term, the courts of this state may not be used as a vehicle to obtain judicial opinions on points of law . . . and where the question presented is purely academic, we must refuse to entertain the appeal." (Citations omitted.) *Connecticut Foundry Co.* v. *International Ladies Garment Workers Union,* supra.

The contracts that are the subject of this appeal were ratified by the unions and the board of education, imple-

mented and have since expired. Any decision this court might render would have no effect on those contracts. Moreover, the issue pursued on appeal by the board of education is of no moment to the ultimate holding of the labor board. The labor board concluded that the board of education had committed a prohibited practice and a refusal to bargain by submitting the contracts in their entirety to the common council for approval. Even if we were to agree with the board of education that the insurance benefits are not under its sole and exclusive control, such a determination would have no effect on the labor board's order to "[c]ease and desist from conditioning the implementation of [the entire] collective bargaining agreement[s], previously negotiated and agreed to, upon the submission and approval of the collective bargaining agreement[s] to the [common council] . . . ." Rather, we would be addressing a point of law from which no actual or practical relief could follow.[5]

The board of education contends, however, that this case should not be dismissed as moot because the issue of whether it had sole and exclusive control of insurance benefits, and thus whether the provisions concerning those benefits had to be submitted to the common council for approval, is "capable of repetition, yet evading review." *Southern Pacific Terminal Co.* v. *Interstate Commerce Commission,* 219 U.S. 498, 515, 31 S. Ct. 279, 55 L. Ed. 310 (1911); see *Weinstein* v. *Bradford,* 423 U.S. 147, 149, 96 S. Ct. 347, 46 L. Ed. 2d 350 (1975); *Connecticut Foundry Co.* v. *International Ladies Garment Workers Union,* supra, 20–21. In so claiming, the board of education relies on *Board of Education*

---

[5] The board of education concedes that it need not submit its collective bargaining agreements with the unions in their entirety to the common council for approval. Therefore, the labor board's "cease and desist" order, prohibiting the board of education from conditioning implementation of the collective bargaining agreements upon approval of the common council, does not have a continuing effect on the parties.

v. *Board of Labor Relations,* 201 Conn. 685, 519 A.2d
41 (1986), and *Hartford Principals' & Supervisors'
Assn.* v. *Shedd,* supra.

In *Shedd,* we stated that "the 'capable of repetition,
yet evading review' doctrine was limited to the situa-
tion where two elements combined: (1) the challenged
action was in duration too short to be fully litigated
prior to its cessation or expiration, and (2) there was
reasonable expectation that the same complaining party
would be subjected to the same action again." *Hart-
ford Principals' & Supervisors' Assn.* v. *Shedd,* supra,
499, quoting *Weinstein* v. *Bradford,* supra. Accord-
ingly, because we determined the issue presented was
likely to arise again and the challenged action was too
short in duration to be fully litigated prior to its expi-
ration, we declined to dismiss the appeal as moot. *Hart-
ford Principals' & Supervisors' Assn.* v. *Shedd,* supra.[6]

While we have based several decisions to hear appeals
on the "capable of repetition, yet evading review" doc-
trine, we have held that "in determining whether to
rely on this mitigating principle we would consider a
number of relevant factors. Among the factors we have
identified are: (1) the public importance of the ques-
tion presented; (2) the potential effect of the ruling on
an ongoing program of the state's penal or civil sys-
tem; and (3) the possibility of a similar effect on the
plaintiff himself in the future." *Shays* v. *Local Griev-
ance Committee,* supra, 572–73; cf. *Murray* v. *Lopes,*
205 Conn. 27, 529 A.2d 1302 (1987). In *Waterbury
Hospital* v. *Connecticut Health Care Associates,* supra,
253 n.5, we noted that "the 'capable of repetition, yet
evading review' principle was not, in and of itself, a
justification for reviewing an admittedly moot case but

---

[6] Similarly, in *Board of Education* v. *Board of Labor Relations,* 201 Conn.
685, 686–87 n.2, 519 A.2d 41 (1986), we assumed that the controversy was
not moot because the appeal raised questions which were capable of repe-
tition, yet evading review. Therefore we addressed the merits of the appeal.

was merely one factor to be considered when faced with a potentially moot matter." See also *Delevieleuse* v. *Manson,* 184 Conn. 434, 437 n.2, 439 A.2d 1055 (1981).[7]

In determining that the appeal in *Shedd* was not moot, we held that the issue in that case presented a situation that was "capable of repetition, yet evading review." Although not expressly mentioned in that determination, the factors enumerated above were nonetheless relevant in deciding not to dismiss the appeal as moot.[8] The issue in *Shedd* was whether the mediation and arbitration procedures set forth in the Teacher Negotiation Act, General Statutes § 10-153f, were available to resolve contractual disputes between an employees' union and a school board during the term of an existing contract. That issue presented a question of public importance potentially affecting an ongoing program in the state's civil dispute resolution system. The construction of the Teacher Negotiation Act not only was important to the parties in *Shedd* but also conceivably could have affected every midterm dispute which arose between any one of the state's local or regional boards of education and the exclusive representative of a teachers' or administrators' unit. Moreover, while there was a reasonable expectation that

---

[7] In *Delevieleuse* v. *Manson,* 184 Conn. 434, 437, 439 A.2d 1055 (1981), we recognized four factors to be considered when determining whether an appeal was moot; namely, whether the issues: (1) were capable of repetition, yet evaded review; (2) affected an ongoing program of the state's penal system; (3) could affect the plaintiffs in the future; and (4) presented questions of public importance which made it desireable to decide the points.

[8] In *Delevieleuse* v. *Manson,* 184 Conn. 437 n.2, 434, 439 A.2d 1055 (1981), we explicitly noted that a divergent standard for determining whether a labor dispute appeal was moot had not been established. There is nothing in *Hartford Principals' & Supervisors' Assn.* v. *Shedd,* 202 Conn. 492, 522 A.2d 264 (1987), which purports to establish a divergent mootness standard for labor cases. Accordingly, the considerations set forth in *Delevieleuse* and in *Shays* v. *Local Grievance Committee,* 197 Conn. 566, 572–73, 499 A.2d 1158 (1985), are still pertinent in determining whether an appeal involving a labor dispute is moot.

midterm disputes might arise between the same parties and be of such a duration as to avoid being fully litigated, there was also a reasonable expectation that a similar dispute might arise between another board of education and a teachers' or administrators' union. Thus, in finding the appeal in *Shedd* not moot, other considerations were relevant to our determination.

Similarly, in *Board of Education* v. *Board of Labor Relations,* supra, 686, 686–87 n.2, we found that the issue on appeal, i.e., whether proposals for teacher evaluations pursuant to the Teacher Evaluation Act in General Statutes § 10-151b were a mandatory subject of collective bargaining, was not moot because the case raised *an important question of statutory construction* capable of repetition, yet evading review. We further reasoned that the issue of collective bargaining *not only affects an ongoing part of the state's program for education* but is likely to arise again in future labor negotiations between the parties. (Emphasis added.) Id., 686–87 n.2. Therefore, we addressed the merits of the appeal, even though the collective bargaining agreement which gave rise to the dispute had since expired.

After considering the above mentioned factors, we conclude that this case does not merit review. The sole issue pressed by the board of education concerns the interpretation of local charter provisions. The case does not present a question of far reaching public importance. Nor would a ruling on the question potentially affect an ongoing program of the *state's* civil system, as was the case in *Hartford Principals' & Supervisors' Assn.* v. *Shedd,* supra, and *Board of Education* v. *Board of Labor Relations,* supra.

Additionally, while there is a possibility that the same complaining parties, namely the unions, might be subject to the same action in the future, we find it significant that the unions have each entered into a successor

contract with the board of education without incident. At oral argument, the board of education asserted that, after negotiating a successor agreement with each of the unions, it again submitted the provisions concerning insurance benefits to the common council for approval. There is nothing on the record, however, to indicate that the unions had challenged this course of conduct. We have recognized that the actions of the parties themselves can cause a case to become moot. *Hartford Principals' & Supervisors' Assn.* v. *Shedd,* supra, 497; *Waterbury Hospital* v. *Connecticut Health Care Associates,* supra, 251. Thus, we find the unions' apparent acquiescence to the actions of the board of education to be of consequence in determining whether the appeal is moot. We also note parenthetically that, in previous collective bargaining with the unions prior to the present case, the board of education had never submitted the contracts to the common council for approval.

Moreover, even if we were to address the merits of the board of education's appeal, we could not offer any actual or practical relief from the labor board's ultimate determination and order. The board of education, in essence, seeks an opinion on an academic point of law. "In these circumstances, discretionary prudential concerns counsel against our undertaking to render an opinion that would, in effect, be merely advisory." *State* v. *Hope,* 203 Conn. 420, 425, 524 A.2d 1148 (1987).

The appeal is dismissed as moot.

In this opinion PETERS, C. J., HEALEY and CALLAHAN, Js., concurred.

SHEA, J., dissenting. I disagree with the conclusion that the appeal is moot for two reasons: (1) the analysis is inconsistent with that we applied in our recent decision in *Hartford Principals' & Supervisors' Assn.* v. *Shedd,* 202 Conn. 492, 496, 522 A.2d 264 (1987); and

(2) it is inconsistent with our policy of following the decisions of the federal courts concerning provisions of the National Labor Relations Act analogous to those of our state Labor Relations Act, General Statutes §§ 31-101 through 31-111b. *Imperial Laundry, Inc.* v. *Board of Labor Relations,* 142 Conn. 457, 460, 115 A.2d 439 (1955).

## I

In *Hartford Principals' & Supervisors' Assn.,* we concluded that the criteria for the "capable of repetition, yet evading review" doctrine were met where the collective bargaining agreements under which the dispute arose had expired because of the likelihood that disputes between the same parties over the same statutory construction issues would arise again. The probability in the present case of renewed disputes over the necessity of submitting for council approval the provisions of future contracts concerning employee insurance benefits between the city and the unions is equally great. Such provisions are a standard part of collective bargaining agreements between the unions and the city, which continues to adhere to the view that its charter requires that these provisions be approved by the legislative body in spite of the contrary rulings of the state labor board and the court below. The fact that the unions acquiesced in this practice when successor contracts were last entered into, when the parties expected a resolution of the issue in this pending case, hardly indicates an abandonment of their position that the board of education has exclusive authority over the subject matter of the dispute. Their failure to file another unfair labor practice complaint under these circumstances hardly indicates acquiescence.

The opinion attempts to distinguish *Hartford Principals' & Supervisors' Assn.* on the ground of the relative public importance of the issues involved in the

dispute, concluding that the present case "does not present a question of far reaching public importance" but deals merely "with the interpretation of a local charter provision," that would "not affect an ongoing program of the state's civil system," as in *Hartford Principals' & Supervisors' Assn.* I think this distinction in the degree of public importance is too flimsy to serve as a useful criterion in deciding whether an appeal is moot. The implication is left that where the issue concerns only a municipal charter it is too insignificant to warrant resolution by this court regardless of the likelihood of its repetition as a source of controversy between the same parties. After all, the city's "local charter" is a statute of this state, though it pertains to only one municipality. The degree of public concern criterion that the opinion seeks to add to the standard set forth in *Hartford Principals' & Supervisors' Assn.* for review of issues "capable of repetition, yet evading review," appears to preclude our consideration of any dispute not having a substantial public impact, regardless of its importance to the parties or the probability of its repetition under circumstances where a definitive resolution of the issue cannot be obtained.

## II

Because our Labor Relations Act has been patterned after the National Labor Relations Act, "the judicial interpretation frequently accorded the federal act is of great assistance and persuasive force in the interpretation of our own act." *Imperial Laundry, Inc.* v. *Board of Labor Relations,* supra, 460. The federal courts have frequently rejected the notion that the propriety of a cease and desist order prohibiting an unfair labor practice, such as that ordering the city in this case not to require council approval of employee insurance provisions in future collective bargaining agreements, becomes moot once the particular dispute resulting in the order has been resolved. "A Board order imposes

a continuing obligation; and the Board is entitled to have the resumption of the unfair practice barred by an enforcement decree." *NLRB* v. *Mexia Textile Mills, Inc.,* 339 U.S. 563, 567, 70 S. Ct. 826, 94 L. Ed. 1067 (1950); see also *Local 74, Carpenters Union* v. *NLRB,* 341 U.S. 707, 715, 71 S. Ct. 966, 95 L. Ed. 1309 (1951); *Solo Cup Co.* v. *NLRB,* 332 F.2d 447, 449 (4th Cir. 1964); *NLRB* v. *Denver Building & Construction Trades Council,* 192 F.2d 577 (10th Cir. 1951).

If our review of the merits should result in the affirmance of the position of the state labor relations board that employee insurance benefits are not excluded by the Hartford charter from the general authority of the board of education over the working conditions of school employees, the cease and desist order of the state labor board should be enforceable directly in the courts through contempt proceedings, if it is violated. If our review should invalidate the order, this continuing dispute over the authority of the board will have been set to rest. The dismissal of the appeal for mootness, of course, leaves the dispute over this legal question still open, thus frustrating the legitimate desires of the city, the unions, and the board for a final determination of the issue.

Accordingly, I dissent.