[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, the Town of Hebron, (hereinafter "the Town"), appeals from a Decision and Declaratory Ruling of the defendant, Connecticut State Board of Labor Relations, (hereinafter "the Labor Board"), requiring the Town to negotiate with the defendant, Connecticut State Employees Association, Inc., SEIU, AFL-CIO, Local 760, (hereinafter "the Union"), the issue of pension benefits for non-certified employees of the defendant Hebron Board of Education, (hereinafter "the Board of Education"). The Labor Board acted pursuant to Section 4-176 of the General Statutes and the appeal was brought pursuant to Section 4-183. This court finds for the defendants.
The Union is the exclusive collective bargaining agent for certain non-certified employees — all maintenance workers, secretaries and cafeteria workers — employed by the Board of Education.
In the course of negotiating the collective bargaining agreement between the Union and the Board of Education, the Union proposed the establishment of a pension plan for its represented members. The Board of Education bargained the issue, but ultimately rejected the Union's proposal.
The Union thereafter demanded that the Town negotiate with the Union regarding a pension plan for its members, non-certified employees of the Board of Education. The demand of the Union was based on Section 905 of the Hebron Town Charter, which provides, in pertinent part, as follows:
 The Town shall provide by ordinance a system of retirement benefits for regular full-time employees, including non-certified employees of the Board of Education.
On May 7, 1991, the Union filed a complaint with the Labor Board, alleging that the Town had committed a prohibited practice pursuant to Section 7-470(a) of the Municipal Employee Relations Act by refusing to negotiate with the Union regarding pension benefits for its member employees.
On June 3, 1991, the Union filed an amended complaint CT Page 263 additionally charging the Board of Education with the same violation. The Union essentially was seeking a determination from the Labor Board as to the appropriate "employer" within the town to negotiate the pension issue with the Union. Therefore, on March 24, 1992, the Union amended its complaint to a Petition for Declaratory Ruling pursuant to General Statutes Section 4-176. The petition sought answers to the following questions:
 1. Is the Board of Education required to bargain the issue of pension plans during bargaining for a successor agreement with the Union?
 2. If not, is the Town required to bargain with the Union the issue of pension plans immediately on demand?
This was a contested case in the administrative proceeding below. On April 4, 1992, the parties reached a complete Stipulation of Facts and Exhibits and waived a hearing before the Labor Board. All parties submitted written briefs to the Labor Board.
On November 10, 1992, the Labor Board issued its Decision and Declaratory Ruling, (Town of Hebron and Hebron Board of Education and Connecticut State Employees Association (CSEA) SEIU, AFL-CIO, Local 760, Decision No. 3055 (1992), and determined that the Town is obligated to bargain with the Union immediately upon demand regarding pension benefits for the represented, non-certified employees of the Board of Education. The Labor Board also ordered the Town to fulfill its bargaining obligation by meeting at reasonable times and places upon request by the Union to confer in good faith regarding the pension issue.
Pursuant to General Statutes Section 4-183, on December 22, 1992, the Town took a timely appeal from the Labor Board's Decision and Declaratory Ruling, claiming that the ruling of the Labor Board is clearly erroneous and contrary to both law and logic in that the Town does not and should not have sole and exclusive control over pension plans under its charter. The Town argues that the Board of Education is the proper municipal employer for purposes of negotiating the pension benefits at issue with the Union.
Counsel representing the Labor Board, the Town and the Board of Education appeared before the court on December 10, 1993 to CT Page 264 present evidence, testimony and argument on the issue of aggrievement, as the Labor Board seeks dismissal of the Town's appeal, claiming the Town is not an aggrieved party.[1]
Counsel for these parties again appeared on December 22, 1993 to present argument on the validity of the Labor Board's Decision and Declaratory Ruling. No further evidence was presented on the central issue in the case. All parties relied on their initial Full Stipulation of Fact and accompanying exhibits, which were provided to this court as part of the certified record of proceedings before the Labor Board pursuant to General Statutes Sec. 4-183(g).
 I
Pleading and proof of aggrievement are prerequisites to a trial court's jurisdiction over subject matter on appeal from an administrative agency. Bakelaar v. City of West Haven, 193 Conn. 59,475 A.2d 283 (1984). Claims of aggrievement present an issue of fact for determination by the trial court. The burden of proving aggrievement rests upon the plaintiffs who have alleged it. Hartford Distributors, Inc. v. Liquor Control Commission, 177 Conn. 616,419 A.2d 346 (1979).
The test for determining aggrievement is a well-settled two-fold determination. First, the party claiming to be aggrieved must demonstrate a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest, such as the concern of all members of the community as a whole. Second, the party claiming to be aggrieved must establish that this specific personal and legal interest has been specially and injuriously affected by the decision. State Medical Society v. Board of Examiners in Podiatry, 203 Conn. 295, 299-300,524 A.2d 636 (1987); Light Rigging Co. v. Department of Public Utility Control, 219 Conn. 168, 173, 592 A.2d 386 (1991); Bakelaar v. West Haven, supra, 65.
Aggrievement is established if "there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." O'Leary v. McGuinness,140 Conn. 80, 83, 98 A.2d 660 (1953); Hall v. Planning Commission,181 Conn. 442, 445, 435 A.2d 975 (1980); State Medical Society v. Board of Examiners in Podiatry, supra, 300; Light Rigging Co. v. Department of Public Utility Control, supra, 173. CT Page 265
The Decision and Declaratory Ruling of the Labor Board in this case requires the Town to "meet upon demand to negotiate regarding pensions", to "post immediately and leave posted for . . . sixty consecutive days . . ., in a conspicuous place where the employees customarily assemble . . ." a copy of the Labor Board's decision; and to notify the Labor Board "of the steps taken by the Town . . . to comply" with the order. Failure to comply with the order to bargain presumably exposes the Town to enforcement action and sanctions under the Municipal Employee Relations Act, General Statutes Section 7-467 et. seq., staff resources have been diverted and will be diverted in the future to comply with the order, and, if bargaining leads to the establishment of any pension plan, the Town, not the Board of Education, will be required to fund the expense out of its funds.
Moreover, the Town disputes the Labor Board's statutory interpretation of a town charter provision. As long as there can be shown some direct injury for which the plaintiff seeks redress, the injury that is alleged need not be great and need not be primarily economic. Board of Pardons v. Freedom of Information Commission, 210 Conn. 646, 649, 556 A.2d 1020 (1986); Maloney v. Pac, 183 Conn. 313, 320-321, 439 A.2d 349 (1981).
A genuine likelihood of future liability is sufficient to confer standing. Maloney v. Pac, supra, 321-22; Kuser v. Orkis,169 Conn. 66, 73, 362 A.2d 943 (1975). Because failure to comply with the order of the Labor Board exposes the Town to sanctions and because the Town will be obligated to continually bargain this issue with the Union into the future, the Town has a specific and personal interest in the validity of the order.
In addition, the Town has a legitimate institutional interest in the integrity and interpretation of its own charter provision. The Town has advanced a colorable claim of injury to its own governing function.
The court finds that the Town's allegations reciting its dispute with the Labor Board's finding that representatives of the Town, not the Board of Education, must meet upon demand of the Union to negotiate regarding pensions and ordering ancillary relief, and its finding that the town charter vests sole and exclusive control over pension benefits for the non-certified employees of the Board of Education with the Town constitute a sufficient articulation of aggrievement to meet the requirement of Conn. Gen. Stat. Sec. 4-183(a). CT Page 266
 II
On the issue of whether or not the Decision and Declaratory Ruling of the Labor Board dated November 10, 1992 is erroneous and contrary to law, the facts are not in dispute. The parties indicated that the Full Stipulation of Fact, including joint exhibits marked A through Q contained in the record before the Labor Board, are true and correct and may serve as the factual basis for the court to make its determination of the legal issue.
Resolution of the legal issue is guided by the limited scope of judicial review afforded by the Uniform Administrative Procedure Act, General Statutes Section 4-166 et. seq., to the determinations made by an administrative agency. Even as to questions of law, the court's duty is to decide whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. Conclusions of law reached by the agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. New Haven v. Freedom of Information Commission, 205 Conn. 767, 774, 535 A.2d 1297 (1988); Perkins v. Freedom of Information Commission, 228 Conn. 158, 164-65, ___ A.2d ___ (1993).
Based upon the pleadings before the Labor Board, the Full Stipulation of Fact of the parties presented in the record before the agency, which includes exhibits, and the law pertaining to municipal employees, the court makes the following findings of fact:
1. CSEA Inc., SEIU, AFL-CIO, Local 760 is an exclusive collective bargaining agent within the meaning of the Municipal Employees Relations Act representing a bargaining unit created by Decision No. 1378 (December 10, 1976) and currently described as "all maintenance workers, secretaries and cafeteria workers employed by the Hebron Board of Education."
2. The Hebron Board of Education and the Town of Hebron are employers within the meaning of the Municipal Employees Relations Act, General Statutes Section 7-467 et. seq.
3. There is a collective bargaining agreement in effect between the Board of Education and the Union with a term which runs from July 1, 1990 to June 30, 1994. CT Page 267
4. The negotiations leading to the current contract began on or about January 29, 1990 and concluded with a tentative agreement on July 20, 1990. The tentative agreement was ratified by the Union on July 30 and signed by the parties on or about August 10, 1990.
5. During the course of negotiations, the Union proposed to establish a pension program for employees of the unit. The Board of Education bargained the issue but ultimately rejected the Union's proposal for a pension program funded by the Board of Education and the proposal was then withdrawn.
6. The Board of Education does not provide a pension program for any of its non-certified employees.
7. The Union, on or about June 13, 1990 and prior to the conclusion of its contract negotiations with the Board of Education, requested that the Town provide a pension for employees in the bargaining unit which request was denied.
8. On November 8, 1990, the Union sought to petition the Board of Selectmen of the Town for a special town meeting to consider establishment of a pension.
9. The petition was rejected on November 15, 1990 due to an opinion of the town attorney that the petition was not specific enough for the town meeting to act on.
10. In April, 1991, the Union requested that the Town begin negotiations on a pension plan.
11. The Town, on advice of its counsel, declined to enter into negotiations with the Union on the grounds that the Town does not have sole and exclusive control over pension issues for Board of Education employees.
12. The Town has and maintains a pension plan for Town employees.
13. On May 7, 1991, the Union filed a prohibited practice against the Town, amended June 3, 1991, to include the Board of Education, charging that the Board of Education, or in the alternative, the Town, committed a practice prohibited by the Municipal Employee Relations Act by refusing to negotiate pension CT Page 268 benefits.
14. Section 905, Retirement, of the charter of the Town states:
 The Town shall provide by ordinance a system of retirement benefits for regular full-time employees including non-certified employees of the Board of Education. The Town may operate its own retirement plan, may enter into a contract with any financial institution authorized to do business in this state, may elect to participate in the Connecticut Municipal Employees Retirement Plan, may elect to participate in the old age and survivor insurance system under the Federal Social Security Act or may choose any combination thereof.
15. On March 24, 1992, the Union filed its second amendment changing the amended complaint before the Labor Board to a Petition for Declaratory Ruling.
The Town claims that the Connecticut State Board of Labor Relations has erroneously ruled that:
 1. The Board of Education does not have the sole and exclusive control over pension plans for its non-certified employees and cannot negotiate with the Union regarding pension plans on behalf of said employees.
 2. The Town Charter vests sole and exclusive control over pension benefits for non-certified employees of the Board of Education with the Town . . . and the Town must meet upon demand to negotiate regarding pensions.
The Town claims the Decision and Declaratory Ruling of the Labor Board is clearly erroneous and contrary to law in that the record shows that the Town does not have, under its charter, sole and exclusive control over pension plans and that the Board of Education is the proper municipal employer for purposes of negotiating with the Union pension benefits for its non-certified employees. CT Page 269
The question whether the Town's representatives or the Board of Education's representatives must negotiate with the Union regarding pension benefits must be answered in light of the Supreme Court's analysis of the "sole and exclusive control" language contained in Section 7-474(d) of the Municipal Employees Relation Act as set forth in Local 1186, AFSCME v. Board of Education of the City of New Britain, 182 Conn. 93, 438 A.2d 12 (1980). Section 7-474(d) states, in pertinent part:
 If the municipal employer is a . . . school board . . . which by statute, charter, special act or ordinance has sole and exclusive control over the appointment of and the wages, hours and conditions of employment of its employees, such school board . . . shall represent such municipal employer in collective bargaining agreements with the employees organization."
Analysis of whether or not a local board of education has sole and exclusive control may require a review of the provisions of a local charter by a court or agency to determine if the broad powers conferred on local school boards by statute are limited by town charter provisions. If a local charter provision removes from the board of education sole and exclusive control over the appointment of, or the wages, hours and conditions of employment of board of education employees, then the board of education cannot negotiate the term or condition of employment over which control has been removed. Negotiation of that item becomes the sole responsibility of the municipality and/or its designee. See City of Hartford, Connecticut State Labor Board Decision No. 2812 (1990).
In determining if a charter provision removes from the local board of education the sole and exclusive control over a condition of employment, our Supreme Court, in Local 1186, supra, looked at the plain language of the New Britain charter and applied traditional rules of statutory construction. When construing a charter, the rules of statutory construction generally apply. Aminio v. Butler, 183 Conn. 211, 217, 440 A.2d 757 (1981); Cilley v. Lamphere, 206 Conn. 6, 12, 535 A.2d 1305 (1980).
In the Local 1186 case, the charter specifically excluded from otherwise broad powers granted to the board of education the authority to remove certain nonprofesional [nonprofessional] employees in classified service. The Court determined that New Britain's charter, read as CT Page 270 a whole, intended to give the board of education control over the appointment, wages, hours and conditions of employment of all employees, but did not give the school board control over the removal of nonprofessional, classified employees. Thus, the Court held that the New Britain board of education was not bound by an agreement negotiated by the city and the union representing nonprofessional classified board of education employees. The New Britain board of education was declared to be the exclusive negotiator for the appointment, wages, hours and conditions of employment of its nonprofessional classified employees despite not having control over their removal because Section 7-474(d) does not require exclusive control over removal of employees.
The Court in Local 1186 first looked to Section 10-220 of the General Statutes and stated:
 The authority vested in local board of education is derived from a multitude of sources. On the one hand, local boards act as agencies of the state to carry out the constitutional guarantee of free public education contained in article eighth, Section 1 and implemented by General Statutes Section 10-220. Pursuant to Section 10-220, local boards are specifically charged with the duty to "maintain good public elementary and secondary schools" and to see to "the care, maintenance and operation of buildings, lands, apparatus and other property used for school purposes." See Maitland v. Thompson, 129 Conn. 186, 191, 27 A.2d 160 (1942). Furthermore, although it is the municipalities that appropriate the funds for the maintenance of public schools, General Statutes Section 10-220 provides that it is the local boards that decide, in their discretion, how those funds shall be budgeted and expended. Board of Education v. Ellington, 151 Conn. 1, 6, 193 A.2d 466 (1963); cf. Fowler v. Enfield, 138 Conn. 512, 530, 86 A.2d 662 (1953); Local 1186, supra, 100.
However, the Court further noted that local charter provisions may diminish a local school board's authority.
 On the other hand, local boards are also governed by local charters specially enacted by the General CT Page 271 Assembly pursuant to article tenth of the Constitution of Connecticut and the Home Rule Act; General Statutes Section 7-187 — 7-201 . . . . Local charters may be binding upon local boards either because a relevant state statute expressly defers to local charter provisions . . . or because the local charter provisions are not inconsistent with or inimical to the efficient and proper operation of the educational system otherwise entrusted by state law to the local boards. See Wallingford v. Board of Education, 152 Conn. 568, 574-75, 210 A.2d 446 (1965); Local 1186, supra, 101.
Subsequent to the Local 1186 decision, several Connecticut State Board of Labor decisions have applied the Supreme Court's "sole and exclusive control" analysis. In City of Hartford, Connecticut State Board of Labor Relations, Decision No. 2335 (1984), several bargaining units comprised of non-certified personnel filed complaints with the Labor Board alleging that the board of education committed a refusal to bargain by submitting their respective collective bargaining agreement to the Hartford City Council for review and approval as a prerequisite to implementation. In that case, as in this case, the City charter provided that non-certified employees were to be covered under the City's pension system. The board of education argued that it could not negotiate the subject of pensions and furthermore that the entire agreement must be submitted to the city council for approval. The Labor Board held that the entire collective bargaining agreement did not have to be submitted to the city council; rather, only that part of the agreement over which the board of education lacked sole and exclusive control must be submitted. This decision was appealed by the City and denied by the Superior Court. (Hartford Board of Education, v. Connecticut State Board of Labor Relations, No. CV84-029804S, Superior Court, J.D. Hartford/New Britain At Hartford, May 15, 1986). The City further appealed to the Supreme Court, which dismissed the appeal as moot. Board of Education v. Board of Labor Relations, 205 Conn. 116,530 A.2d 588 (1987).
Later, in City of Hartford, Connecticut State Labor Board, Decision No. 2812 (1990), a case again involving negotiations for pension benefits for certain board of education employees, the Labor Board ruled that the City was required to bargain over the issue of pensions and the school board could not participate in CT Page 272 bargaining "unless the City clearly and unequivocally has designated the school board as its bargaining representative specifically for the purpose of negotiating that condition of employment". In both City of Hartford cases, the pertinent Hartford City Charter provision read as follows: ". . . all employees of the board of education, except teachers . . . shall be members of the municipal employer retirement fund."
The union's position in the second City of Hartford case was not unlike the Town's position in the instant case. The union took the position that the City of Hartford could participate at its discretion in the negotiation process but that the board of education had the authority to negotiate, subject to city council approval, inferring some form of dual participation. This position was deemed impractical and unworkable and logically inconsistent with the Supreme Court's sole and exclusive control analysis discussed in Local 1186, supra. The Labor Board found:
 The practical problems are obvious. If the City does decide to participate in the negotiations, what exactly is its role? Does it sit as an advisor, observer, or equal party? Local legislative bodies and school boards are oftentimes at odds politically and philosophically with one another. The School Board may resent the City's presence at the table and of course refuse to accept its advice despite the realization that its failure to do so may result in rejection by the local legislative body. On the other hand, if the City is an equal at the table, the Union may be faced with entirely different proposals by separate employers. More importantly, Section 7-473c(c)(2)[2] requires an arbitration panel in rendering an award to consider "the negotiations between the parties prior to arbitration" . . . . If an arbitration panel is faced with a negotiations history between the School Board and the Union and a final proposal by the City which is clearly at odds with the School Board's proposals during negotiations, must it then discount making the award solely because there is no negotiation history between CT Page 273 the employer who has sole and exclusive control and the Union? City of Hartford, Decision No. 2812, supra, p. 9.
In the present case, Section 905 of the Town Charter is clear and unambiguous in stating that, "the Town shall provide by ordinance a system of retirement benefits for regular, full-time employees, including non-certified employees of the Board of Education . . .". This clearly places the responsibility for the provision of a pension plan for non-certified Board of Education employees with the Town, and removes sole and exclusive control of such pension benefits from the Board of Education.
The Town argues that it has never understood Section 905 of the Charter to vest in it sole and exclusive control of pension benefits for the non-certified employees of the Board. These arguments are unpersuasive in light of the Local 1186 decision. Even if the Town's proposed interpretation of the Charter provision were correct, the provision still removes from the Board of Education sole and exclusive control over retirement benefits for non-certified Board of Education employees. Were it true, as the Town maintains, that some form of dual control was intended and the Town's participation is discretionary, the Board of Education cannot negotiate that condition of employment because its control is not exclusive in light of the Town's authority over the condition under the charter.
The specific reference to "non-certified employees of the Board of Education" resolves any doubt that the Labor Board's interpretation of the Town's charter is correct. By including this clause in Section 905, the drafters made it perfectly clear that the non-certified employees of the Board of Education were to be included in the retirement plan provided by the Town to other town employees. It should be noted that Section 901 of the same charter specifically excludes all Board of Education employees from rules and regulations of personnel administration, so the drafters knew how to provide categorically for total priority for the Board of Education.
An interpretation other than the one propounded by the Labor Board would render the reference to the inclusion of non-certified employees of the Board of Education in Section 905 meaningless or superfluous, which would violate the principle that a statute should be interpreted, when possible, so that no word, phrase, or clause will be rendered insignificant or void absent a compelling CT Page 274 reason. Connecticut Light and Power Co. v. Castle, 179 Conn. 415,423, 426 A.2d 1324 (1980); Hartford Principals and Supervisors Association v. Shedd, 202 Conn. 492, 506, 522 A.2d 264 (1987); New London v. Zoning Board of Appeals, 29 Conn. App. 402, 406,615 A.2d 1054 (1992).
No such compelling reason is presented here. In fact, it makes sense for a town to encompass as many employees as possible within the same pension plan in order to maximize the sums maintained and to facilitate effective management and control of pension funds.
When a court or agency interprets a local legislative enactment, it should look for the expressed intent of the legislative body in the language it used to manifest that intent. If it is clear and unambiguous on its face, the court or agency need look no further. New London v. Zoning Board of Appeals, supra, 406; Planning Zoning Commission v. Gilbert, 208 Conn. 696,705, 546 A.2d 823 (1988); New Britain v. Connecticut State Board of Labor Relations, 31 Conn. Sup. 211, 215-216, 327 A.2d 268 (1974).
The Labor Board's reading of the charter as vesting control over pension for non-certified Board of Education employees is not illogical or erroneous and it meets with the plain and unambiguous meaning expressed in the words of the charter provision itself. The Labor Board rejected the Town's assertion that it had never understood the charter, which was just recently adopted in 1989, to vest in the Town sole and exclusive control of pension benefits for the non-certified employees of the Board of Education; the Town provided no examples of this "previous interpretation" nor any reason why such an understanding by the Town would be reasonable under any circumstances.
Some of the evidence submitted to the Labor Board indicates that, at least for a period of time, the Town did exercise control over the subject of a pension plan for these employees. The Town initially entertained the Union's request for a pension plan, but rejected the request "at this time." (Full Stipulation of Fact, Exhibit H). The Town then instructed the Union to petition for the enactment of an ordinance, but the Board of Selectmen rejected the petition as "too vague." (Full Stipulation of Fact Exhibit J).
The language contained in Section 905 of the Town charter is unadorned and unambiguous. Had the Town intended to have pension benefits for non-certified employees of the Board of Education CT Page 275 controlled exclusively by the Board of Education, it could have easily said so. Neither the courts nor administrative agencies have the authority to substitute their own ideas of what might be a wiser provision in place of a clear and unambiguous expression of legislative will. Robinson v. Unemployment Security Board of Review, 181 Conn. 1, 21, 434 A.2d 293 (1980); Penfield v. Jarvis,175 Conn. 463, 474-75, 399 A.2d 1290 (1978); United Aircraft Corporation v. Fusari, 164 Conn. 401, 415, 311 A.2d 65 (1972). The intent of an act of a legislative body is to be found in the meaning of the words of the statute; that is, in what the legislative body did say, not in what it may have meant to say. Frazier v. Manson, 176 Conn. 638, 642, 410 A.2d 475 (1979); State v. Grant, 176 Conn. 17, 20, 404 A.2d 873 (1978).
Nor is the Labor Board's interpretation of the Charter beyond the scope of its statutory authority, as the Town argues. The Labor Board has the authority to issue a declaratory ruling as to the applicability of the provisions of the Municipal Employee Relations Act to specified circumstances. In this case, when the Town refused to bargain with the Union over pension benefits despite its apparent control over pensions under the charter, the Union first complained that the Town, or alternatively, the Board of Education, had committed a prohibited practice pursuant to Section 7-567 and 7-477 of the General Statutes. The Labor Board's required consideration of this question under Sections 4-471(4) and4-176 necessitated its examination as to the meaning of Section 905 of the charter.
The Labor Board, by the very nature of the proceedings before it, is often called upon to review and interpret local legislative provisions outside the specific collective bargaining statutes under its jurisdiction. In collective bargaining, especially in the public sector, the interrelation of laws is often critical to determining the rights and responsibilities of the parties in these unique relationships. The duty to bargain collectively and in good faith takes on more importance in the public sector because government employees are denied the right to strike. General Statutes Section 7-475; City of New Haven v. State Board of Labor Relations, 36 Conn. Sup. 18, 24-25, 410 A.2d 140 (1979).
In City of New Haven v. State Board of Labor Relations, supra, the court, (Berdon, J.), upheld the Labor Board's interpretation of a new city residency ordinance as creating a new condition of employment, although the City argued that its new ordinance was a continuing precondition of employment and therefore not subject to CT Page 276 mandatory bargaining. The court noted that "The interpretation of the residence ordinance as a condition of employment is consistent with the labor board's prior holdings and is therefore entitled to great weight." Supra, 28.
The Town has discussed at great length the idea that it is not mandated to provide a pension system to its employees and therefore, it does not need to discuss the subject with this Union. This confuses the obligation to bargain with the obligation to provide a pension plan. Even if the charter allows the Town some leeway in establishing a pension system for these employees, that leeway does not render the Labor Board's decision incorrect or permit the Town to refuse to bargain on what is a mandatory subject of bargaining.[3] Whether the Town is obligated to provide a pension plan to these employees is not relevant to the issue in this case.
The only analysis which the Labor Board was required to do in this case was to determine if the language of the Town charter removed from the Board of Education the sole and exclusive control over the issue of pensions for non-certified employees of the Board of Education. Clearly, the charter places with the Town the responsibility for determining whether or not to provide a pension plan to these employees.
The Decision and Declaratory Ruling of the defendant Connecticut State Labor Board is not erroneous or contrary to law. The decision is affirmed and the plaintiff Town's appeal is hereby dismissed.
CHRISTINE E. KELLER, J.